UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:

**ACADIANA MANAGEMENT GROUP, L.L.C., ET AL.[1]**      **CASE NO. 17-50799**

        **DEBTORS**      **CHAPTER 11**

**DEBTORS' MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTORS TO PAY OBLIGATIONS UNDER PREPETITION INSURANCE POLICIES; RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE COVERAGE; AND HONOR THE TERMS OF THE INSURANCE FINANCING AGREEMENTS AND PAY PREMIUMS THEREUNDER**

Acadiana Management Group, LLC, et al (the "Debtors"), as debtors-in-possession, file this motion (the "Motion") pursuant to sections 105, 363, and 507 of the Bankruptcy Code to request an order authorizing the Debtors to pay obligations under prepetition insurance policies and related relief, in support shows as follows:

**Relief Requested**

1. The Debtors seek entry of an order substantially in the form attached hereto as proposed: (a) authorizing, but not directing, the Debtors to (i) pay their obligations under insurance policies entered into prepetition, (ii) renew, supplement modify or purchase insurance coverage in the ordinary course of

---

[1] AMG Hospital Company, L.L.C., Case No. 17-50800; AMG Hospital Company II, L.L.C., Case No. 17-50801; Albuquerque - AMG Specialty Hospital, L.L.C., Case No. 17-50802; Central Indiana - AMG Specialty Hospital, L.L.C., Case No. 17-50803; Tulsa - AMG Specialty Hospital, L.L.C., Case No. 17-50804; LTAC Hospital of Louisiana - Denham Springs, L.L.C., Case No. 17-50805; Las Vegas - AMG Specialty Hospital, L.L.C., Case No. 17-50806; LTAC Hospital of Greenwood, L.L.C., Case No. 17-50807; LTAC of Louisiana, L.L.C., Case No. 17-50808; Houma - AMG Specialty Hospital, L.L.C., Case No. 17-50809; LTAC Hospital of Edmond, L.L.C., Case No. 17-50810; LTAC Hospital of Wichita, L.L.C., Case No. 17-50811; AMG Realty I, L.L.C., Case No. 17-50812; CHFG Albuquerque, L.L.C., Case No. 17-50813; and AMG Realty Youngsville, L.L.C., Case No. 17-50814

Page -1-

business, and (iii) honor the terms of the Financing Agreements (as defined below) and pay premiums thereunder; and (b) granting related relief. In addition, the Debtors request that the Court schedule a final hearing within approximately 30 days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

## Jurisdiction and Venue

2. This Court (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## Background

5. On June 23, 2017 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their property and are operating business as debtors-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code.[2] A detailed description of the Debtors' business and the events leading to bankruptcy is set forth in the Declaration of August Rantz IV in Support of Certain First Day Pleadings (the "First Day Declaration") filed concurrently with this Motion and is incorporated herein by reference. Further attached hereto and incorporated herein as Exhibit "A," *in globo*, is a schedule of Insurance Policies by facility, financing

---

[2] 11 U.S.C. §§ 101, et seq. Unless otherwise noted, all statutory references are to the Bankruptcy Code.

agreements relative thereto, premium allocation worksheets demonstrating payments by each facility, and the Debtors' insurance proposal for 2017 showing the prior year premiums.

## The Debtors' Insurance Policies

6. The Debtors maintain various insurance policies (collectively, the "Insurance Policies") administered by third-party carriers and providing coverage for, among other things, professional liability, general liability, property coverage, umbrella coverage, and workers' compensation.

7. The attached Exhibit "A." *in globo*, demonstrates a schedule of these policies and the financing agreements relative to each facility, as well as premium allocation worksheets showing the premium payments by each facility, and the Debtors' insurance proposal for 2017 reflecting the prior year premiums. The Debtors intend to maintain these Insurance Policies that are both appropriate and necessary with respect to the Debtors' operations.

8. As stated, some of the Insurance Policies are financed through financing agreements. Pursuant to the Financing Agreements, the Debtors are required to make monthly premium payments for the various policies as demonstrated in the facility Financing Agreements attached and incorporated herein as Exhibit "A." The Debtors' anticipate that there will be outstanding account balances related to the Financing Agreements, some or all of which will come due during the pendency of these chapter 11 cases. The Debtors seek the authority to honor any prepetition amounts outstanding on account of the Insurance Policies, including under the terms of the Financing Agreements, and to renew the Financing Agreements in the ordinary course of business.

9.      Continuation of the Insurance Policies is essential to the preservation of the value of the Debtors' properties and assets. Moreover, in many cases, coverage provided by the Insurance Policies is required by the regulations, laws, and contracts governing the Debtors' commercial activities. Accordingly, the Debtors request authority to maintain their existing Insurance Policies, to the extent appropriate with respect to the Debtors' remaining operations, to pay prepetition obligations related thereto, and to enter into new insurance policies and premium financing agreements, as applicable. Most importantly, the Debtors' workers' compensation coverage is set to expire on June 30, 2017 [See Exhibit "A"], requiring immediate authority to renew in order to maintain the legality of business operations on an uninterrupted basis.

10.     Some, but not all of the Insurance Policies may be obtained through the use of brokerage services (collectively, the "Brokers"). Brokers in some instances assist the Debtors in obtaining comprehensive insurance coverage for operations by evaluating benefit plan offerings, assisting the Debtors with the procurement and negotiation of the Insurance Policies, and enabling the Debtors to obtain those policies on advantageous terms at competitive rates.

11.     The Debtors believe that continuation of the services of the Brokers is necessary to assure the Debtors' ability to secure Insurance Policies on advantageous terms at competitive rates, facilitate the proper maintenance of the Debtors' Insurance Policies post petition, and ensure adequate protection of the Debtors' property for any party in interest. Accordingly, the Debtors request authority to continue paying the Brokerage Fees.

## Basis for Relief

**A. Paying obligations under the Insurance Policies and maintaining insurance coverage in the ordinary course of Business is warranted under the Bankruptcy Code.**

12. Section 363 of the Bankruptcy Code provides that "[t)he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Under section 363(b), courts generally require only that the debtor "show that a sound business purpose justifies" the proposed use of property. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (requiring a "good business reason" for use under section 363(b) of the Bankruptcy Code). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); see also *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

13. Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code pursuant to the "doctrine of necessity." 11 U.S.C. § 105(a). The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if essential to the debtor's continued

operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of prepetition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. I89, 191-92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity enables a court to authorize the payment of prepetition claims prior to confirmation of a chapter 11 plan).

14. Paying obligations under the Insurance Policies is warranted under section 363(b) and the doctrine of necessity. As described above, maintaining the Insurance Policies is necessary to preserve the value of the Debtors' assets, thereby ensuring the adequate protection of the Debtors' property for any party in interest, and to minimize exposure to risk. Furthermore, insurance coverage is required by the U.S. Trustee as well as the laws of various jurisdictions in which the Debtors operate. Failing to maintain the Insurance Policies would have a material adverse effect on the ability of the Debtors to maximize the value of their estates.

15. Courts routinely grant the relief requested herein under sections 105(a) and 363(b) of the Bankruptcy Code. *See, e.g., In re Dolan Company*, No. 14-10614 (BLS) (Bankr. D. Del. May 25, 2014) (authorizing debtors to pay prepetition premiums and enter into new insurance policies pursuant to sections 105(a) and 363(b) of the Bankruptcy Code); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013); *In re Maxcom Telecomunicaciones, S.A.B. de C.V*, No. 13-11839 (PJW) (Bankr. D. Del. July 25, 2013).

**B. Processing of Checks and Electronic Fund Transfers Should Be Authorized**

16. The Debtors have sufficient funds to pay the amounts described in this motion by virtue of expected cash flows during the chapter 11 cases, debtor-in-possession financing, and anticipated access

to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Insurance Policies. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

### C. The Requirements of Rule 6003 Are Satisfied

17. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtors to continue insurance coverage and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' ability to administer their estates at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to preserve and maximize the value of the Debtors estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

**D. Reservation of Rights**

18.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as: (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**E. Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

19.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**F. Notice**

20.     The Debtors will provide notice of this Motion to: (I) the United States Trustee, (ii) the Debtors' 20 largest unsecured creditors, (iii) secured creditors, (iv) federal, state and local taxing

authorities, and (v) all parties entitled to notice (collectively the "Notice Parties"). As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties. The Debtors submit that, in light of the nature of the relief requested and the urgency of the circumstances surrounding this Motion, no other or further notice need be given.

### G. No Prior Request

21. No prior motion for the relief requested has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Interim Order and Final Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Alexandria, Louisiana, this 23rd day of June, 2017.

Respectfully submitted:

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

By: /s/Bradley L. Drell
      Bradley L. Drell (Bar Roll #24387)
      Heather M. Mathews (Bar Roll # 29967)
      B. Gene Taylor, III (Bar Roll #33407)
      P. O. Box 6118
      Alexandria, LA 71307-6118
      Telephone: (318) 445-6471
      Facsimile: (318) 445-6476
      e-mail: bdrell@goldweems.com

**ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION: ACADIANA MANAGEMENT GROUP, L.L.C., ET AL.**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:

ACADIANA MANAGEMENT GROUP, L.L.C., ET AL.[1]     CASE NO. 17-50799

DEBTORS     CHAPTER 11

## CERTIFICATE OF SERVICE

This is to certify that the *Motion for Interim Order Authorizing Debtors to Pay Obligations Under Prepetition Insurance Policies; Renew, Supplement, Modify, or Purchase Insurance Coverage; and Honor the Terms of the Insurance Financing Agreements and Pay Premiums Thereunder* was served on the following:

1. Office of the United States Trustee, Gail McCulloch, via email Gail.McCulloch@usdoj.gov;

2. BOKF, NA, as Administrative Agent for BOKF, NA dba Bank of Oklahoma, Eastman National Bank, NBC Oklahoma and Trustmark National Bank, via facsimile notice to fax number 405-272-2588, Attn: Brian Warden, and regular mail, BOKF, NA dba Bank of Oklahoma, Attn: Brian Warden and Robert Dudley, Commerce Center, 9250 North May Ave., Oklahoma City, OK, 73102; and

3. The twenty (20) largest creditors each of the Debtors' cases as shown on the attached mailing list by placing a copy of same in the United States Mail, postage prepaid.

Alexandria, Louisiana, this 23rd day of June, 2017.

---

[1] AMG Hospital Company, L.L.C., Case No. 17-50800; AMG Hospital Company II, L.L.C., Case No. 17-50801; Albuquerque - AMG Specialty Hospital, L.L.C., Case No. 17-50802; Central Indiana - AMG Specialty Hospital, L.L.C., Case No. 17-50803; Tulsa - AMG Specialty Hospital, L.L.C., Case No. 17-50804; LTAC Hospital of Louisiana - Denham Springs, L.L.C., Case No. 17-50805; Las Vegas - AMG Specialty Hospital, L.L.C., Case No. 17-50806; LTAC Hospital of Greenwood, L.L.C., Case No. 17-50807; LTAC of Louisiana, L.L.C., Case No. 17-50808; Houma - AMG Specialty Hospital, L.L.C., Case No. 17-50809; LTAC Hospital of Edmond, L.L.C., Case No. 17-50810; LTAC Hospital of Wichita, L.L.C., Case No. 17-50811; AMG Realty I, L.L.C., Case No. 17-50812; CHFG Albuquerque, L.L.C., Case No. 17-50813; and AMG Realty Youngsville, L.L.C., Case No. 17-50814

/s/Bradley L. Drell
OF COUNSEL