UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:

ACADIANA MANAGEMENT GROUP, L.L.C., ET AL.[1]     CASE NO. 17-50799

DEBTORS                                            CHAPTER 11

**MOTION FOR AUTHORITY TO PAY PREPETITION
EMPLOYEE WAGES, COMPENSATION, AND EMPLOYEE BENEFITS**

Acadiana Management Group, LLC, et al (the "Debtors"), as debtors-in-possession, file this motion (the "Motion") pursuant to sections 105, 363, and 507 of the Bankruptcy Code to request an order authorizing the Debtors to pay prepetition wages, compensation, and employee benefits, and in support shows as follows:

**I. BACKGROUND**

1.  On June 23, 2017 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their property and are operating business as debtors-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code.[2] A detailed description of the Debtors' business and the events leading to bankruptcy is set forth in the Declaration of August Rantz IV in Support of Certain First Day

---

[1] AMG Hospital Company, L.L.C., Case No. 17-50800; AMG Hospital Company II, L.L.C., Case No. 17-50801; Albuquerque - AMG Specialty Hospital, L.L.C., Case No. 17-50802; Central Indiana - AMG Specialty Hospital, L.L.C., Case No. 17-50803; Tulsa - AMG Specialty Hospital, L.L.C., Case No. 17-50804; LTAC Hospital of Louisiana - Denham Springs, L.L.C., Case No. 17-50805; Las Vegas - AMG Specialty Hospital, L.L.C., Case No. 17-50806; LTAC Hospital of Greenwood, L.L.C., Case No. 17-50807; LTAC of Louisiana, L.L.C., Case No. 17-50808; Houma - AMG Specialty Hospital, L.L.C., Case No. 17-50809; LTAC Hospital of Edmond, L.L.C., Case No. 17-50810; LTAC Hospital of Wichita, L.L.C., Case No. 17-50811; AMG Realty I, L.L.C., Case No. 17-50812; CHFG Albuquerque, L.L.C., Case No. 17-50813; and AMG Realty Youngsville, L.L.C., Case No. 17-50814

[2] 11 U.S.C. §§ 101, et seq. Unless otherwise noted, all statutory references are to the Bankruptcy Code.

Pleadings (the "First Day Declaration") filed concurrently with this Motion and is incorporated herein by reference. Further attached hereto and incorporated herein as Exhibit "A," *in globo*, is an itemization of each of the Debtors' expenses related to employee wages, salaries, compensation, insurance benefits, and other employee related expenses made subject of this Motion.

## II. RELIEF REQUESTED

2. Prior to the Petition Date and in the ordinary course of its business, the Debtors paid employees' wages, salaries, and other compensation and benefits. As employee obligations accrue on an ongoing and continuous basis, but are paid periodically, the intervening bankruptcy filing has resulted in the accrual of unpaid prepetition wages, salaries, and commissions, and/or other compensation owed to employees and related third-parties. By this Motion, the Debtors seek authority to pay certain prepetition obligations owed to its employees, including, but not limited to: (i) amounts owed to employees for wages; (ii) maintenance of employee health and benefit plans; (iii) reimbursement of employee expenses; and (iv) other miscellaneous employee expenses and benefits (collectively, the "Prepetition Employee Obligations").[3]

## III. THE PRE-PETITION EMPLOYEE OBLIGATIONS

**A.     Wages, Salaries and Other Compensation**

3. The Debtors' employees are paid bi-weekly. The Debtors provide payroll information to Netchex, a third party payroll servicing company that processes the Debtors' payroll and debits

---

[3] The Debtors do not intend by this Motion to assume any executory obligations, and this Motion should not be deemed an assumption or adoption of any agreements or policies providing for such coverage. Rather, the Debtors simply intend, in their discretion and in the exercise of their business judgment, to maintain their current staff and policies consistent with prior employment and personnel policies pending further business decisions.

the payroll funds from the Debtors' account prior to each payday. The Debtors' average collective biweekly payroll obligations are approximately $1,739,000.00 per pay period as follows:

```
Acadiana Management Group, LLC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $168,000.00
AMG Specialty Hospital (Greenwood). . . . . . . . . . . . . . . . . . . . . . . . . . . . . $96,000.00
AMG Specialty Hospital (Houma). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $185,000.00
AMG Specialty Hospital (Edmond). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $280,000.00
AMG Specialty Hospital (Muncie). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $230,000.00
AMG Specialty Hospital (Denham Springs). . . . . . . . . . . . . . . . . . . . . . . . $90,000.00
AMG Specialty Hospital (Wichita). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $125,000.00
AMG Specialty Hospital (Albuquerque). . . . . . . . . . . . . . . . . . . . . . . . . . $172,000.00
AMG Specialty Hospital (Lafayette). . . . . . . . . . . . . . . . . . . . . . . . . . . . . $115,000.00
AMG Specialty Hospital (Las Vegas). . . . . . . . . . . . . . . . . . . . . . . . . . . . $125,000.00
AMG Specialty Hospital (Tulsa). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $153,000.00
                                                                  _____
                                           TOTAL:     $1,739,000.00
```

*See* Exhibit "A".

The Debtors' next regularly scheduled paydays and applicable pay period are as follows:

```
Acadiana Management Group, LLC. . . . . . . . . . .  (6/30/17; Pay Period 6/11/17 - 6/24/17)
AMG Specialty Hospital (Greenwood). . . . . . . . . . (7/7/17; Pay Period 6/18/17 - 7/1/17)
AMG Specialty Hospital (Houma). . . . . . . . . . . . . (7/7/17; Pay Period 6/18/17 - 7/1/17)
AMG Specialty Hospital (Edmond). . . . . . . . . . . . (7/7/17; Pay Period 6/18/17 - 7/1/17)
AMG Specialty Hospital (Muncie). . . . . . . . . . . . . (7/7/17; Pay Period 6/18/17 - 7/1/17)
AMG Specialty Hospital (Denham Springs). . . . . . .(7/7/17; Pay Period 6/18/17 - 7/1/17)
AMG Specialty Hospital (Wichita). . . . . . . . . . . . . (7/7/17; Pay Period 6/18/17 - 7/1/17)
AMG Specialty Hospital (Albuquerque). . . . . . . . . (7/7/17; Pay Period 6/18/17 - 7/1/17)
AMG Specialty Hospital (Lafayette). . . . . . . . . . .  (6/30/17; Pay Period 6/11/17 - 6/24/17)
AMG Specialty Hospital (Las Vegas). . . . . . . . . .  (6/30/17; Pay Period 6/11/17 - 6/24/17)
AMG Specialty Hospital (Tulsa). . . . . . . . . . . . . .  (6/30/17; Pay Period 6/11/17 - 6/24/17)
```

*See* Exhibit "A".

Accordingly, the next Debtors' paydays involve prepetition periods and thus, amounts owed to employees for work performed prior to the Petition Date. The Debtors estimate that their gross payroll obligations for the upcoming respective paydays that include prepetition services will be $1,739,000.00, payable on June 30, 2017, and July 7, 2017, respectively. The Debtors seek authority

to pay this amount, plus any additional outstanding amounts owed as of the Petition Date for accrued and unpaid wages and salaries.

**B.      Insurance and Related Benefits**

4.      The Debtors further provide employees with certain insurance benefits (collectively the "Insurance Benefits"), for with the Debtors fund 75% of the cost thereof with the remaining amount funded by participating employees.  The Debtors withhold funds from participating employees' paychecks for their portion of the insurance premiums, which the Debtors pay on its employees' behalf.  The Debtors' approximate collective monthly cost of Insurance Benefits is $356,000.00, as follows:

```
Acadiana Management Group, LLC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $44,000.00
AMG Specialty Hospital (Greenwood). . . . . . . . . . . . . . . . . . . . . . . . . . . . $25,000.00
AMG Specialty Hospital (Houma). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $40,000.00
AMG Specialty Hospital (Edmond). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $53,000.00
AMG Specialty Hospital (Muncie). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$44,000.00
AMG Specialty Hospital (Denham Springs). . . . . . . . . . . . . . . . . . . . . . . .$20,000.00
AMG Specialty Hospital (Wichita). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$26,500.00
AMG Specialty Hospital (Albuquerque). . . . . . . . . . . . . . . . . . . . . . . . . . .$21,000.00
AMG Specialty Hospital (Lafayette). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$27,000.00
AMG Specialty Hospital (Las Vegas). . . . . . . . . . . . . . . . . . . . . . . . . . . . .$24,000.00
AMG Specialty Hospital (Tulsa). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$31,500.00
                                                                  _____
                                                                  TOTAL:      $356,000.00
```

See Exhibit "A".

The Debtors' next regularly scheduled premium payments are due on July 1, 2017, in the following amounts:

```
Acadiana Management Group, LLC. . . . . . . . . . . . . . . . . . . . . . $00.00 (previously paid)
AMG Specialty Hospital (Greenwood). . . . . . . . . . . . . . . . . . . . . . . . . . . . . $4,753.03
AMG Specialty Hospital (Houma). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $6,042.42
AMG Specialty Hospital (Edmond). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $7,874.60
AMG Specialty Hospital (Muncie). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $5,504.86
AMG Specialty Hospital (Denham Springs). . . . . . . . . . . . . . . . . . . . . . . . .$1,862.01
AMG Specialty Hospital (Wichita). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$3,927.98
```

AMG Specialty Hospital (Albuquerque)............................. $3,178.99
AMG Specialty Hospital (Lafayette)............................... $2,888.79
AMG Specialty Hospital (Las Vegas).............................. $2,252.47
AMG Specialty Hospital (Tulsa).................................. $4,485.87

                                                                          **TOTAL:   $42,771.02**

The Debtors seek authority to continue providing the Insurance Benefits in the ordinary course of their business and to pay any accrued but unpaid premium amounts as of the Petition Date.

**C.**     **Additional Benefits – Employee Health Reimbursement Accounts; Vacation and Paid Time Off; Retirement Benefits; Expense Reimbursement; Miscellaneous Employee Withholdings/Deductions**

5.     The Debtors fund employee health reimbursement accounts, and to the extent the post-petition funding relates to prepetition employee claims, the Debtors request authority to continue funding these accounts in the ordinary course of business.

6.     The Debtors also provide certain eligible employees with vacation and paid time off (collectively the "PTO"). Employees are also eligible for additional paid time off for certain personal matters, subject to some restrictions. The Debtors request authorization to continue its PTO policy post-petition and to honor PTO liabilities to its employees that may have arisen prior to the Petition Date.

7.     The Debtors further reimburse certain business-related expenses incurred by employees in the scope of their employment, some of which may have been incurred but not yet reimbursed as of the Petition Date. The Debtors' employees incur such expenses in reliance upon the understanding that such expenses will be reimbursed, and failure to reimburse employees would impact employee morale and cause them financial hardship. In the event that any prepetition reimbursable expenses remain unpaid as of the Petition Date, the Debtors seek authority to pay such reimbursable expenses.

8.     Additionally, the Debtors are also generally pay certain miscellaneous employee benefits, as well as contribute retirement benefits for eligible employees, for which the Debtors request authorization to continue to pay in the ordinary course of business.

9.     An itemization of the Debtors' average employee related expenses on a pay period basis is as follows:

```
Acadiana Management Group, LLC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $27,060.00
AMG Specialty Hospital (Greenwood). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $8,300.00
AMG Specialty Hospital (Houma). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $22,000.00
AMG Specialty Hospital (Edmond).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $20,675.00
AMG Specialty Hospital (Muncie). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $21,350.00
AMG Specialty Hospital (Denham Springs). . . . . . . . . . . . . . . . . . . . . . . . . . $10,000.00
AMG Specialty Hospital (Wichita). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $14,640.00
AMG Specialty Hospital (Albuquerque). . . . . . . . . . . . . . . . . . . . . . . . . . . . . $13,200.00
AMG Specialty Hospital (Lafayette). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $9,770.00
AMG Specialty Hospital (Las Vegas). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $11,820.00
AMG Specialty Hospital (Tulsa). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $11,200.00
                                                                         _____
                                                            TOTAL:       $170,015.00
```

## IV. BASIS FOR RELIEF

**A.     The Debtors' Employees Are Indispensable And Critical To The Debtors' Continued Operations**

10.     To maintain the continuity of the Debtors' business operations and to preserve the morale of employees, it is important that the Debtors be permitted to pay the Prepetition Employee Obligations at their discretion in the ordinary course of business. The continued loyalty of a debtor's employees is a necessary component to any successful Chapter 11 case. The filing of a Chapter 11 petition is a stressful and uncertain time for a debtor's employees and such stress and uncertainty often cause poor employee morale at a time when a debtor needs its employees to be most loyal. If employees do not receive payment for work performed prepetition, it is likely that the Debtors will

lose a significant number of employees with little or no notice. Moreover, many of the Debtors' employees live paycheck to paycheck and would suffer severe adverse consequences if they failed to receive their full compensation. Likewise, the Debtors would suffer immediate and irreparable harm as a result of any resulting loss of morale, exodus of employees, and disruption to its operations.

11. Honoring the Debtors' Prepetition Employee Obligations will minimize the hardship that employees will certainly endure if payroll is interrupted and will prevent the wholesale loss of employees that would ensue if the employees lost the reasonable expectation that they will be paid for their work. Accordingly, the Debtors believe that it is in the best interest of their estates to honor the Prepetition Employee Obligations.

**B.    The Prepetition Employee Obligations Are Priority Claims Under Sections 507(a)(4)-(5)**

12. The requested relief is appropriate under Sections 507(a)(4) and (a)(5) of the Bankruptcy Code, which provide for priority payment up to $12,475 per individual for pre- petition claims for wages, salaries, vacation and sick leave and claims for contributions to employee benefit plans. 11 U.S.C. §§ 507(a)(4) and (a)(5). The Debtors have determined that all of the Prepetition Employee Obligations are entitled to priority under sections 507(a)(4)and (a)(5) and no employee is owed more than $12,475. As a result, the Debtors' payment of the Prepetition Employee Obligations to employees in the ordinary course of business should neither prejudice general unsecured creditors nor materially affect the Debtors' estates, because claims under sections 507(a)(4) and (a)(5) are already entitled to priority payment under a reorganization plan. 11 U.S.C. § 1129(a)(9)(B).

**C.     The Debtors Have a Valid Business Justification for the Payment Of The Prepetition Employee Obligations**

13.     To the extent payment of the Prepetition Employee Obligations is deemed to be outside the ordinary course of the Debtors' business, the requested relief is also appropriate under section 363(b), which empowers the Court to authorize the Debtor to expend funds outside of the ordinary course of business. 11 U.S.C. § 363(b). In order to obtain approval for the use of estate assets outside the ordinary course of business, a debtor must demonstrate a valid business justification for the use of the assets. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 152 (Bankr. D. Del. 1999); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1985). Payment of prepetition wages and salaries in order to protect the debtor's business, retain the debtor's employees, and preserve employee morale is a sufficient business justification for under Section 363. *Ionosphere Clubs*, 98 B.R. at 175. Because payment of the Prepetition Employee Obligations is essential to protect the Debtors' business during the pending reorganization, the Court should authorize the payment under Section 363(b).

**D.     Payment Of The Prepetition Employee Obligations Is Permissible Under The Doctrine Of Necessity**

14.     The relief requested herein is also authorized under section 105 of the Bankruptcy Code, which authorizes the Court "to issue any order . . . necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). The Debtors submit that payment of the Prepetition Employee Obligations is critical to the Debtors' ability retain its employees, continue to operate, and preserve the going concern value of the Debtors' business.  Accordingly, the Court should grant the requested relief under section 105(a).

15. In addition to the general application of the Court's equitable powers, the relief requested in this Motion is specifically supported by the well-established "necessity of payment" rule. *See In re Lehigh and New England Ry. Co.*, 657 F.2d 570 (3d Cir. 1981); *In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 192 (Bankr. D. Del. 1994); *Ionosphere Clubs*, 98 B.R. at 176. The "necessity of payment" rule recognizes judicial power to authorize a debtor in a reorganization case to pay pre-petition claims when such payment is essential to the continued operation of the debtor. *Ionosphere Clubs*, 98 B.R. at 176; *see also Lehigh*, 657 F.2d at 581 (quoting *In re Penn Central Trans. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972)) ("The necessity of payment doctrine . . . [permits] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid."). The rationale for this rule is consistent with the paramount goal of Chapter 11, i.e., "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176.

16. The payment of the Prepetition Employee Obligations is necessary to prevent the risk of damage to the Debtors' estate, which would adversely affect all parties in interest. In this case, the continued services and cooperation of the Debtors' employees is integral and necessary to a successful reorganization. Maintaining its current workforce is essential to the Debtors' ability to continue operations. If the Debtors are unable to assure its employees that they will be paid timely, or if employees are not immediately assured of uninterrupted, critical payments to which they are entitled, the Debtors' post-petition operations would be seriously jeopardized due to employee resentment, resignations, loss of good will and disruption of employee morale. The Debtors have not identified a practical or legal alternative to payment of the Prepetition Employee Obligations that

would not result in a significant disruption of its business and harm to the estate. Because the potential harm and economic disadvantage that would result from the Debtors' failure to pay the Prepetition Employee Obligations is grossly disproportionate to the amount of any pre-petition claim that may be paid, the Court should grant the relief requested herein.

17. Finally, bankruptcy courts consistently authorize the payment of prepetition wage and salary obligations in similar Chapter 11 proceedings. *See, e.g., In re Goody's Family Clothing, Inc.*, Case No. 08-11133 (Bankr. D. Del. June 9, 2008) [Docket No. 38] (permitting payment of prepetition wage claims); see also *Ionosphere Clubs*, 98 B.R. at 175-77 (payment of employees' prepetition claims may be necessary to preserve morale and protect debtor's business, enhancing debtor's ability to reorganize); *Burchinal v. Central Washington Bank* (*In re Adams Apple Inc.*), 829 F.2d 1484, 1490 (9th Cir. 1987) (courts permit payment of pre-petition employee obligations when necessary for rehabilitation); *In re Chateaugay Corp.*, 80 B.R. 279, 287-88 (S.D.N.Y. 1987) (debtors authorized to pay certain pre- bankruptcy wages, salaries, employee reimbursement expenses, and benefits, including workers' compensation claims). The Debtors submit that similar relief is appropriate in this case.

**E. Waiver Of Bankruptcy Rules 6003 And 6004**

18. As set forth above, payment of the Prepetition Employee Obligations is necessary to the Debtors' ongoing operations and avoid immediate and irreparable harm to the Debtors' business and estate. Accordingly, the Debtors have satisfied the requirements of Rule 6003(b) and the relief sought in this Motion can be granted within 21 days of the Petition Date.

19. In order to implement the relief sought herein, the Debtors request a waiver of the notice requirements of Rule 6004(a) and the stay imposed by Rule 6004(h) to the extent such provisions are applicable.

## V. NOTICE

21. The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee through Gail McCulloch, Esquire by email; (ii) BOKF, NA, as Administrative Agent for BOKF, NA dba Bank of Oklahoma, Eastman National Bank, NBC Oklahoma and Trustmark National Bank, via facsimile notice to fax number 405-272-2588, Attn: Brian Warden, and regular mail, BOKF, NA dba Bank of Oklahoma, Attn: Brian Warden and Robert Dudley; and (iii) all creditors shown on the list of the twenty (20) largest creditors filed in each of the Debtors' cases (collectively the "Notice Parties"). As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties. The Debtors submit that, in light of the nature of the relief requested and the urgency of the circumstances surrounding this Motion, no other or further notice need be given.

## VI. CONCLUSION

21. Accordingly, the Debtors request that the Court enter an order (i) authorizing the Debtors to pay the Prepetition Employee Obligations as requested herein; and (ii) granting any further relief the Court deems appropriate.

Alexandria, Louisiana, this 23rd day of June, 2017.

> Respectfully submitted:
> **GOLD, WEEMS, BRUSER, SUES & RUNDELL**
>
> By: /s/Bradley L. Drell
> Bradley L. Drell (Bar Roll #24387)
> Heather M. Mathews (Bar Roll # 29967)
> B. Gene Taylor, III (Bar Roll #33407)
> P. O. Box 6118
> Alexandria, LA 71307-6118
> Telephone: (318) 445-6471
> Facsimile: (318) 445-6476
> e-mail: bdrell@goldweems.com
>
> **ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION: ACADIANA MANAGEMENT GROUP, L.L.C., ET AL.**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

IN RE:

ACADIANA MANAGEMENT GROUP, L.L.C., ET AL.[1]   CASE NO. 17-50799

      DEBTORS   CHAPTER 11

**CERTIFICATE OF SERVICE**

This is to certify that the ***Motion for Authority to Pay Pre-Petition Wages, Compensation and Employee Benefits*** was served on the following:

1. Office of the United States Trustee, Gail McCulloch, via email Gail.McCulloch@usdoj.gov;

2. BOKF, NA, as Administrative Agent for BOKF, NA dba Bank of Oklahoma, Eastman National Bank, NBC Oklahoma and Trustmark National Bank, via facsimile notice to fax number 405-272-2588, Attn: Brian Warden, and regular mail, BOKF, NA dba Bank of Oklahoma, Attn: Brian Warden and Robert Dudley, Commerce Center, 9250 North May Ave., Oklahoma City, OK, 73102; and

3. The twenty (20) largest creditors each of the Debtors' cases as shown on the attached mailing list by placing a copy of same in the United States Mail, postage prepaid.

Alexandria, Louisiana, this 23rd day of June, 2017.

                                                /s/Bradley L. Drell
                                                OF COUNSEL

---

[1] AMG Hospital Company, L.L.C., Case No. 17-50800; AMG Hospital Company II, L.L.C., Case No. 17-50801; Albuquerque - AMG Specialty Hospital, L.L.C., Case No. 17-50802; Central Indiana - AMG Specialty Hospital, L.L.C., Case No. 17-50803; Tulsa - AMG Specialty Hospital, L.L.C., Case No. 17-50804; LTAC Hospital of Louisiana - Denham Springs, L.L.C., Case No. 17-50805; Las Vegas - AMG Specialty Hospital, L.L.C., Case No. 17-50806; LTAC Hospital of Greenwood, L.L.C., Case No. 17-50807; LTAC of Louisiana, L.L.C., Case No. 17-50808; Houma - AMG Specialty Hospital, L.L.C., Case No. 17-50809; LTAC Hospital of Edmond, L.L.C., Case No. 17-50810; LTAC Hospital of Wichita, L.L.C., Case No. 17-50811; AMG Realty I, L.L.C., Case No. 17-50812; CHFG Albuquerque, L.L.C., Case No. 17-50813; and AMG Realty Youngsville, L.L.C., Case No. 17-50814