UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:

ACADIANA MANAGEMENT GROUP, L.L.C., ET AL.[1]  CASE NO. 17-50799

DEBTORS  CHAPTER 11

EMERGENCY MOTION FOR AN INTERIM ORDER (A) DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR DEBTORS' UTILITY SERVICES, AND (B) RESTRAINING UTILITIES FROM ALTERING, DISCONNECTING OR REFUSING THE DEBTORS SERVICE, AND (C) SCHEDULING A FINAL HEARING ON THE INTERIM RELIEF SOUGHT HEREIN

NOW INTO COURT, through undersigned counsel, come Acadiana Management Group, L.L.C.; AMG Hospital Company, L.L.C.; AMG Hospital Company II, L.L.C.; Albuquerque - AMG Specialty Hospital, L.L.C.; Central Indiana - AMG Specialty Hospital, L.L.C.; Tulsa - AMG Specialty Hospital, L.L.C.; LTAC Hospital of Louisiana - Denham Springs, L.L.C.; Las Vegas - AMG Specialty Hospital, L.L.C.; LTAC Hospital of Greenwood, L.L.C.; LTAC of Louisiana, L.L.C.; Houma - AMG Specialty Hospital, L.L.C.; LTAC Hospital of Edmond, L.L.C.; LTAC Hospital of Wichita, L.L.C.; AMG Realty I, L.L.C.; CHFG Albuquerque, L.L.C.; and AMG Realty Youngsville, L.L.C. as debtors and debtors-in-possession (collectively "Debtors"), pursuant to section 366 of Title 11 of the United States Code (the "Bankruptcy Code"), who file this *Emergency Motion for an Interim Order (A) Determining Adequate Assurance of Payment for Debtors' Utility Services, (B) Restraining Utilities from Altering, Disconnecting or Refusing the Debtors Service and (C) Scheduling a Final Hearing on*

---

[1] AMG Hospital Company, L.L.C., Case No. 17-50800; AMG Hospital Company II, L.L.C., Case No. 17-50801; Albuquerque - AMG Specialty Hospital, L.L.C., Case No. 17-50802; Central Indiana - AMG Specialty Hospital, L.L.C., Case No. 17-50803; Tulsa - AMG Specialty Hospital, L.L.C., Case No. 17-50804; LTAC Hospital of Louisiana - Denham Springs, L.L.C., Case No. 17-50805; Las Vegas - AMG Specialty Hospital, L.L.C., Case No. 17-50806; LTAC Hospital of Greenwood, L.L.C., Case No. 17-50807; LTAC of Louisiana, L.L.C., Case No. 17-50808; Houma - AMG Specialty Hospital, L.L.C., Case No. 17-50809; LTAC Hospital of Edmond, L.L.C., Case No. 17-50810; LTAC Hospital of Wichita, L.L.C., Case No. 17-50811; AMG Realty I, L.L.C., Case No. 17-50812; CHFG Albuquerque, L.L.C., Case No. 17-50813; and AMG Realty Youngsville, L.L.C., Case No. 17-50814

*the Interim Relief Sought Herein* (the "Motion"). In support of this Motion, Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.

The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105 and 366. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## INTRODUCTION AND BACKGROUND

2.

On June 23, 2017 (the "Petition Date"), Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (11 U.S.C. §§ 101 et seq., the "Bankruptcy Code"). Debtors are continuing in possession of their properties and are operating their businesses in the ordinary course as debtors-in-possession pursuant to 11 U.S.C §§ 1107 and 1108. No trustee, examiner, or committee has been appointed in these Chapter 11 cases.

3.

Debtors own and operate multiple long-term acute care facilities ("LTACs") located across the country. In the operation of these LTACs, the Debtors obtain utility services, including, but not limited to, electricity, gas, phone and water and sewer services (collectively, the "Utility Services"). A list of the names and addresses of the Utility Companies and the average monthly amount paid to each is attached to this Motion as **Exhibit "A."**

## RELIEF REQUESTED

4.

Section 366 of the Bankruptcy Code prohibits utility companies from altering, refusing or discontinuing service to a debtor for the first thirty (30) days of a bankruptcy case (the "Utility Stay Period"). Upon expiration of the Utility Stay Period, however, section 366(b) provides that a utility company may (but need not) terminate services if a debtor has not furnished adequate assurance of payment in the form of a deposit or other security. In this Chapter 11 Case, the Utility Stay Period will expire on or about July 23, 2017.

5.

Before the Petition Date, the Debtors were current on all payments of invoices received from Utility Companies.

6.

Debtors propose that the Court enter an Order establishing certain procedures (collectively, the "Utility Procedures"), as more fully set forth in paragraph 8 of this Motion and the proposed Order (the "Interim Order"), a copy of which is attached hereto as **Exhibit "B."**

7.

Under the Utility Procedures, after entry of the Interim Order, the Utility Companies would be restrained from discontinuing, altering or refusing service to Debtors for or on account of unpaid charges for pre-petition Utility Services, pending a final hearing (the "Final Hearing") on the Motion.

8.

Until the Final Hearing, the Utility Companies would be bound by the following Utility Procedures:

(a)  Debtors would pay for all post-petition Utility Services by checks in such amounts as

prescribed in the Utility Services' billing statements for post-petition Utility Services (the "Billing Statements"). The Debtors' checks would be mailed so as to be received by the due dates reflected on the Billing Statements.

(b) If any Debtor fails to pay for post-petition Utility Services by the due date as prescribed in the Billing Statements, such Debtor(s) would have five (5) business days to remedy its failure to pay. The five (5) business days would begin to run automatically from the due date reflected on the Billing Statements, without any notice obligation on the part of the Utility Companies.

(c) If the five (5) business day period expires without the Debtor(s) having remedied the failure to timely pay a Billing Statement, as a condition to obtaining future Utility Services with respect to the account represented by the past due Billing Statement, the unpaid Utility Company would have the right to require the Debtor(s) to both (i) pay the past due Billing Statement, and (ii) make a deposit (the "Post-Petition Deposit"). The Post-Petition Deposit would be in an amount equal to the lesser of (i) the average monthly billing for the prior consecutive twelve (12) months, or (ii) the actual billing statement for that account for the month that was not paid timely. The Post-Petition Deposit would be payable no later than ten (10) business days after the date of the notice from the unpaid Utility Company that demands a Post-Petition Deposit in a specified amount consistent with these Utility Procedures (the "Post-Petition Deposit Notice").

(d) If, within ten (10) business days of the date of the Post-Petition Deposit Notice, the Debtor(s) has failed to pay both (i) the past due Billing Statement, and (ii) the Post-Petition Deposit, the unpaid Utility Company would be free to alter, refuse or

discontinue Utility Service to the Debtor(s) with respect to the unpaid account.

(e) If a Utility Company maintains more than one account for a Debtor, the failure to pay for post-petition Utility Services with respect to one account would not be deemed a failure to pay for post-petition Utility Services with respect to any other accounts. Accordingly, the right of a Utility Company to require a Post-Petition Deposit, and to alter, refuse or discontinue Utility Services if the Post-Petition Deposit is not paid, would arise on an account-by-account basis only.

(f) Each Utility Company would be entitled to an administrative expense claim, pursuant to section 503(b)(1) of the Bankruptcy Code, for any past due amounts owed by a Debtor for post-petition Utility Services at the time of plan confirmation or at any other relevant claim determination date; and,

(g) Each Utility Company would retain any deposit or other security it has for pre-filing debts as security for both its pre-filing and any post-filing debts.

**BASIS FOR RELIEF REQUESTED**

9.

Under section 366(b) of the Bankruptcy Code, this Court may determine the standards for assurance of future payment for utility services. Bankruptcy courts have the exclusive responsibility for determining what constitutes adequate assurance for payment of post-petition utility charges and are not bound by local or state regulations. *See In re Begley*, 41 B.R. 402, 405-06 (Bankr. D. Pa. 1984), *aff'd*, 760 F.2d 46 (3d Cir. 1985). Determinations of adequate assurance under § 366 is fully within the Court's decision. *In re Marion Steel Co.*, 35 B.R. 188, 195 (Bankr. D. Ohio 1986).

10.

The Court has the authority to determine the reasonableness of a demand for a post-petition

utility deposit. *In re Heard*, 84 B.R. 454, 459 (Bankr. W.D. Tex. 1987). "Adequate assurance" under section 366 is not synonymous with "adequate protection;" in determining adequate assurance, the Court is not required to give utility companies the equivalent of a guaranty of payment, but must only determine that the utility is not subject to an unreasonable risk of non-payment for post-petition services. *See In re Santa Clara Circuits West, Inc.*, 27 B.R. 680, 685 (Bankr. D. Utah 1982); *In re George C. Freye, Co.*, 7 B.R. 856, 858 (Bankr. D. Me. 1980). Further, in making its determination as to the need for any additional post-petition deposit, the Court should ensure the utility company is treating the debtor the same as it would a similarly situated, non-bankrupt consumer. *See Heard*, 84 B.R. at 459; *In re Whittaker*, 84 Bankr. 934, 937 (Bankr. E.D. Pa. 1988), *aff'd*, 882 F.2d 791 (3d Cir. 1989).

11.

Debtors respectfully request that this Court determine that, pending the Final Hearing to be scheduled by this Court, subject to the conditions set forth in the proposed Utilities Procedures, no post-petition utility deposits are necessary at this time to adequately assure payment for post-petition Utility Services.

12.

On the Petition Date, no termination of the Utility Services for any Debtor was pending. Debtors fully intend to timely tender all post-petition payments for Utility Services furnished by the Utility Companies. The administrative expense status afforded for post-petition Utility Services should protect the Utility Companies from an unreasonable risk of non-payment for such services.

13.

It is imperative to the continued successful operation of the Debtors' LTACs and the welfare of their patients that Utility Services remain uninterrupted during the course of these Chapter 11 cases.

Under the Utility Procedures set forth in this Motion, the Utility Companies will have adequate assurance of timely payment for post-petition Utility Services pursuant to section 366(b) of the Bankruptcy Code.

14.

In the alternative, should any of the providers on **Exhibit "A"** not be considered Utility Companies under the Code, Debtors ask that such providers be considered Critical Vendors, as interruption of services would impair the Debtors' hospital operations. "Under Section 105, a court can permit pre-plan payment of pre-petition obligations when essential to the continued operation of the debtor." *In re NVR* L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citation omitted). The "necessity of payment" doctrine is consistent with the paramount goal of Chapter 11 - "facilitating the continued operation and rehabilitation of the debtor . . . ." *In re Ionosphere Clubs*, 98 BR. 174, 176 (Bankr. S.D.N.Y. 1989). Here, the uninterrupted supply of services on customary trade terms enables the continued care of patients, which is imperative to the ongoing operations and viability of Debtors. The sums involved are insignificant in relation to the potential disruption that would occur if relationships with these providers were to be terminated. Under these circumstances, approval of the payments is appropriate.

15.

Debtors request that a final hearing on this Motion be set on or before July 23, 2017 to address any adequate assurance requests by Utility Services within the requisite time period and prevent any disruption in utility services provided to the Debtors. Debtors also request that any Utility Service that fails to request a determination of adequate assurance prior to the Final Hearing be deemed to have consented to the Utility Procedures as adequate assurance. *See In re Syroco, Inc.*, 2007 WL 2404295 (Bankr. D. P.R. 2007) (stating that a utility provider's lack of objection, response, or counter-demand

after receiving notice of hearing on utilities motion, notice of interim order, and notice of final hearing constitutes tacit acceptance of the debtor's proposed deposit as adequate assurance of payment pursuant to Bankruptcy Code Section 366).

## NOTICE

16.

Notice of this Motion will be served on each of the Utility Companies listed on **Exhibit "A"** to this Motion, and on the twenty (20) largest creditors in each of the Debtors' cases as shown on the attached mailing list. Debtors submit that no further notice is necessary for this Court to enter an Interim Order granting the relief requested by this Motion.

**WHEREFORE**, Debtors respectfully pray that this Court enter an Interim Order, approving the standards set forth by the Debtors in this Motion for adequate assurance of payment for post-petition utility services so that Debtors' utility services will continue uninterrupted (or, in the alternative, deeming any providers not considered Utility Companies to be Critical Vendors, and authorizing payments as such); scheduling a Final Hearing on the relief sought herein on or before July 23, 2017; and, for all such other and further relief as this Court deems just and proper.

Respectfully submitted,

**GOLD, WEEMS. BRUSER, SUES & RUNDELL**

By: /s/ *Bradley L. Drell*
    Bradley L. Drell   (#24387)
    2001 MacArthur Drive
    P.O. Box 6118
    Alexandria, LA 71307-6118
    (318) 445-6471 - Telephone
    (318) 445-6476 - Facsimile
    bdrell@goldweems.com

**ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION: ACADIANA MANAGEMENT GROUP, L.L.C., ET AL.**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:

ACADIANA MANAGEMENT GROUP, L.L.C., ET AL.[1]    CASE NO. 17-50799

        DEBTORS    CHAPTER 11

## CERTIFICATE OF SERVICE

This is to certify that I have this date served the foregoing *Emergency Motion for an Interim Order (A) Determining Adequate Assurance of Payment for Debtor's Utility Services, (B) Restraining Utilities from Altering, Disconnecting or Refusing the Debtors Service and (C) Scheduling a Final Hearing on the Interim Relief Sought Herein* on the following:

1. Office of the United States Trustee, Gail McCulloch, via email Gail.McCulloch@usdoj.gov;

2. BOKF, NA, as Administrative Agent for BOKF, NA dba Bank of Oklahoma, Eastman National Bank, NBC Oklahoma and Trustmark National Bank, via facsimile notice to fax number 405-272-2588, Attn: Brian Warden, and regular mail, BOKF, NA dba Bank of Oklahoma, Attn: Brian Warden, Commerce Center, 9250 North May Ave., Oklahoma City, OK, 73102;

3. All utility companies as shown on the attached mailing list; and

3. The twenty (20) largest creditors each of the Debtors' cases as shown on the attached mailing list by placing a copy of same in the United States Mail, postage prepaid.

Alexandria, Louisiana, this 23rd day of June, 2017.

                                       /s/Bradley L. Drell
                                       OF COUNSEL

---

[1] AMG Hospital Company, L.L.C., Case No. 17-50800; AMG Hospital Company II, L.L.C., Case No. 17-50801; Albuquerque - AMG Specialty Hospital, L.L.C., Case No. 17-50802; Central Indiana - AMG Specialty Hospital, L.L.C., Case No. 17-50803; Tulsa - AMG Specialty Hospital, L.L.C., Case No. 17-50804; LTAC Hospital of Louisiana - Denham Springs, L.L.C., Case No. 17-50805; Las Vegas - AMG Specialty Hospital, L.L.C., Case No. 17-50806; LTAC Hospital of Greenwood, L.L.C., Case No. 17-50807; LTAC of Louisiana, L.L.C., Case No. 17-50808; Houma - AMG Specialty Hospital, L.L.C., Case No. 17-50809; LTAC Hospital of Edmond, L.L.C., Case No. 17-50810; LTAC Hospital of Wichita, L.L.C., Case No. 17-50811; AMG Realty I, L.L.C., Case No. 17-50812; CHFG Albuquerque, L.L.C., Case No. 17-50813; and AMG Realty Youngsville, L.L.C., Case No. 17-50814