UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:

ACADIANA MANAGEMENT GROUP, L.L.C., ET AL.[1]   CASE NO. 17-50799

DEBTORS                                         CHAPTER 11

## DECLARATION IN SUPPORT OF FIRST DAY MOTIONS

I, August J. Rantz, IV, hereby declare under penalty of perjury under the laws of the United States of America, and specifically pursuant to 28 U.S.C. § 1746 :

1.  I am the President of the above-captioned Debtor, Acadiana Management Group, LLC ("AMG"). In this capacity, I am generally familiar with AMG's day-to-day operations, business, and financial affairs, as well the corporate structure of AMG and its affiliated entities (collectively, "the Debtors").

2.  On June 23, 2017 ("Petition date"), AMG filed a petition for voluntary relief under Chapter 11 of the Bankruptcy Code. Thereafter, on the same date, fifteen (15) of AMG's affiliates filed for Chapter 11 relief, including AMG's real estate holding companies, AMG Realty I, LLC., CHFG Albuquerque, LLC and AMG Realty Youngsville, LLC. ("Real Estate Affiliates"), AMG's operating entity holding companies, AMG Hospital Company, LLC and AMG Hospital Company II, LLC. ("Holding Company Affiliates"), and ten (10) of AMG's affiliated hospital operating

---

[1] AMG Hospital Company, L.L.C., Case No. 17-50800; AMG Hospital Company II, L.L.C., Case No. 17-50801; Albuquerque - AMG Specialty Hospital, L.L.C., Case No. 17-50802; Central Indiana - AMG Specialty Hospital, L.L.C., Case No. 17-50803; Tulsa - AMG Specialty Hospital, L.L.C., Case No. 17-50804; LTAC Hospital of Louisiana - Denham Springs, L.L.C., Case No. 17-50805; Las Vegas - AMG Specialty Hospital, L.L.C., Case No. 17-50806; LTAC Hospital of Greenwood, L.L.C., Case No. 17-50807; LTAC of Louisiana, L.L.C., Case No. 17-50808; Houma - AMG Specialty Hospital, L.L.C., Case No. 17-50809; LTAC Hospital of Edmond, L.L.C., Case No. 17-50810; LTAC Hospital of Wichita, L.L.C., Case No. 17-50811; AMG Realty I, L.L.C., Case No. 17-50812; CHFG Albuquerque, L.L.C., Case No. 17-50813; and AMG Realty Youngsville, L.L.C., Case No. 17-50814

companies, Albuquerque - AMG Specialty Hospital, LLC., Central Indiana - AMG Specialty Hospital, LLC, Tulsa - AMG Specialty Hospital, LLC, LTAC Hospital of Louisiana - Denham Springs, LLC, Las Vegas - AMG Specialty Hospital, LLC, LTAC Hospital of Greenwood, LLC, LTAC of Louisiana, LLC, Houma - AMG Specialty Hospital, LLC, LTAC Hospital of Edmond, LLC, and LTAC Hospital of Wichita, LLC ("Operating Company Affiliates").

3. The Debtors intend to operate their respective businesses and manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this Chapter 11 case and, as of the date of the filing of this declaration (this "Declaration"), no official committees have been appointed or designated.

4. To enable the Debtors to reduce the adverse effects of the commencement of this Chapter 11 case on its organization, the Debtors have requested various types of relief in its "first day" motions and applications (collectively, the "First Day Motions"). The First Day Motions seek relief intended to allow the Debtors to effectively transition into Chapter 11 and minimize disruption, thereby preserving and maximizing the value of the Debtors' estates.

5. I am familiar with the contents of the First Day Motions (including the exhibits and schedules in support thereof), and I believe that the relief sought in each: (a) is necessary to enable the Debtors to operate in Chapter 11 with minimal disruption or loss of productivity and value; (b) constitutes a critical element to achieving a successful reorganization of the Debtors; and (c) best serves the Debtors' estates and creditors' interests.

6. Except as otherwise indicated, all facts set forth herein are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant

Page -2-

17-50799 - #12  File 06/23/17  Enter 06/23/17 15:48:29  Main Document  Pg 2 of 18

documents, and information supplied to me by other members of the Debtors' management and advisors. I am authorized to submit this Declaration on behalf of the Debtors, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

7. Part I of this Declaration describes the Debtors' corporate structure and operations, including the circumstances surrounding the commencement of these Chapter 11 cases and the Debtors' debt structure. Part II sets forth the relevant facts in support of each of First Day Motion.

## I. BACKGROUND

### A. The Debtors' Corporate Structure

8. AMG and its filing affiliates generally own and operate long term care acute hospitals and associated real estate for hospitals across the United States.

9. The Operating Company Affiliates operate Long Term Acute Care ("LTAC") hospitals in twelve (12) locations: Wichita, KS, Edmond, OK, Oklahoma City, OK, Tulsa, OK, Greenwood, MS, Albuquerque, NM, Las Vegas, NV, Lafayette, LA, West Greenfield, IN, Muncie, IN, Houma, LA and Denham Springs, LA. Central Indiana - AMG Specialty Hospital, LLC operates the West Greenfield and Muncie, IN hospitals. LTAC Hospital of Edmond, LLC operates the hospitals in Edmond and Oklahoma City, OK.

10. AMG provides management, billing, compliance, legal, financial, and accounting services to the affiliated Debtors, and derives income from the provision of those services.

### B. Ownership of the Debtors

11. Ownership of the Debtors is as follows:

    A. AMG is owned by August J. Rantz, IV, and Timothy W. Howard. August J. Rantz, IV, and Timothy W. Howard each own 50% of AMG.

B. AMG Hospital Company, LLC is owned by August J. Rantz, IV, and Timothy W. Howard. August J. Rantz, IV, and Timothy W. Howard each own 50% of AMG Hospital Company LLC.

C. Albuquerque - AMG Specialty Hospital, LLC is owned by AMG Hospital Company, LLC.

D. AMG Hospital Company II, LLC is owned by Rantz IV Enterprises, LLC and Timothy W. Howard. Rantz IV Enterprises, LLC and Timothy W. Howard each own 50% of AMG Hospital Company II, LLC.

E. Central Indiana - AMG Specialty Hospital, LLC is owned by AMG Hospital Company II, LLC.

F. Tulsa - AMG Specialty Hospital, LLC is owned by AMG Hospital Company II, LLC and a third party. AMG Hospital Company II, LLC owns 99% of Tulsa-AMG Specialty Hospital, LLC.

G. LTAC Hospital of Louisiana - Denham Springs, LLC is owned by AMG Hospital Company II, LLC and a third party. AMG Hospital Company II, LLC owns 97% of LTAC Hospital of Louisiana - Denham Springs, LLC.

H. Las Vegas - AMG Specialty Hospital, LLC is owned by AMG Hospital Company II, LLC and a third party. AMG Hospital Company II, LLC owns 99% of Las Vegas - AMG Specialty Hospital, LLC.

I. LTAC Hospital of Greenwood, LLC. is owned by AMG Hospital Company, LLC and a third party. AMG Hospital Company, LLC owns 86.38% of LTAC Hospital of Greenwood, LLC.

J. LTAC of Louisiana, LLC is owned by August J. Rantz, IV, and Timothy W. Howard.

K. Houma - AMG Specialty Hospital, LLC is owned by AMG Hospital Company, LLC.

L. LTAC Hospital of Edmond, LLC. is owned by AMG Hospital Company, LLC.

M. LTAC Hospital of Wichita, LLC is owned by AMG Hospital Company, LLC.

N. AMG Realty I, LLC is owned by Timothy W. Howard, August J. Rantz, IV, and Rantz IV Enterprises, LLC. Timothy W. Howard owns 50% of AMG Realty I, LLC. August J. Rantz, IV, owns 33 1/3% of AMG Realty I, LLC. Rantz IV Enterprises, LLC owns 16 2/3% of AMG Realty I, LLC.

O. CHFG Albuquerque, LLC is owned by Timothy W. Howard, August J. Rantz, IV, and Rantz IV Enterprises, LLC. Timothy W. Howard owns 50% of CHFG Albuquerque, LLC. August J. Rantz, IV, owns 33 1/3% of CHFG Albuquerque, LLC. Rantz IV Enterprises, LLC owns 16 2/3% of CHFG Albuquerque, LLC.

P. AMG Realty Youngsville, LLC is owned by Timothy W. Howard, August J. Rantz, IV, and Rantz IV Enterprises, LLC. Timothy W. Howard owns 50% of AMG Realty Youngsville, LLC. August J. Rantz, IV, owns 33 1/3% of AMG Realty Youngsville, LLC. Rantz IV Enterprises, LLC owns 16 2/3% of AMG Realty Youngsville, LLC.

### C. Events Leading to the Commencement of this Chapter 11 Case

12. The Chapter 11 filings were necessitated by the effects of the U.S. centers for Medicaid and Medicare services ("CMS"), new, more stringent long term acute care hospital ("LTACH") patient criteria, and a severe rate reduction for non qualifying patients for receiving care at AMG LTAC hospitals. These changes went into effect for AMG and its affiliates on or about September 2016.

13. To summarize these changes, for patients to qualify for the LTAC reimbursement rate of approximately $41,000 for a twenty-five (25) day patient stay, the patient must now spend at least three (3) days in a hospital's intensive care unit or a coronary care unit immediately prior to being admitted to a LTACH, or the patient must require at least 96 hours on a ventilator and have had an acute hospital stay immediately prior to being admitted to a LTACH. For non qualifying patients, the twenty-five (25) day reimbursement rate dropped to approximately $11,000.[2]

14. AMG and its affiliates undertook cost cutting and other measures to cope with the CMS reimbursement rate changes, but these measures proved to be inadequate within the structure of the long term debt borne by AMG and its affiliates. These Chapter 11 cases have been filed to restructure that long term debt to fit the current cash flow the Debtors now receive.

15. Prior to filing, certain AMG Real Estate Affiliates and Holding Company Affiliates were merged and consolidated to reduce the number of Chapter 11 cases that would need to be filed. The mergers, however, preserve the ultimate ownership and debt structure that existed pre-petition.

---

[2] For a more detailed discussion for the financial issues facing LTAC hospitals under the new CMS reimbursement rates see, www.globalcreditportal.com/ratingsdirect/renderArticle.do?articleId=1685955&SctArtId=396412&from=CM&nsl_code

16. To briefly describe the mergers, CHFG Edmond, LLC, CHFG Wichita, LLC, CHFG Denham Springs, LLC, CHFG/HPCG Real Estate I, LLC, and CFG Healthcare Properties, LLC were all merged into AMG Realty I, LLC, as these were all wholly owned subsidiaries. CHFG Albuquerque, LLC was not merged due to the likelihood of a sale of the hospital property given its current state of maintenance. AMG Realty Youngsville, LLC was not merged into any other entity as it was not a subsidiary of any other company and the real property which it owns stands for the debt owed to CHCH of Louisiana, LLC and not Bank of Oklahoma and the syndicated lenders who hold mortgages on various debtor properties described below. Additionally, R&H Holdings of Texas, LLC, R&H Holdings of New Mexico, LLC, R&H of Houma, LLC, and R&H of Midwest, LLC were all merged into AMG Hospital Company, LLC. R&H of Indiana, LLC, R&H Holdings of Louisiana, LLC, R&H Holdings of Tulsa, LLC and AMG Hospital Company III, LLC were merged into AMG Hospital Company II, LLC.

**D. Debt Structure and Largest Secured Creditors**

17. The following is a summary of the debt structure of the largest secured creditors in the debtors' cases, after the above described mergers:

    A. Bank of Oklahoma real estate loan - $28,800,000.00

        1. Borrowers holding real property mortgaged to secure the loan:

            a. AMG Realty I, LLC
            b. CHFG Albuquerque, LLC

        2. Guarantors

            a. Acadiana Management Group, LLC
            b. AMG Hospital Company, LLC
            c. AMG Hospital Company II, LLC

3. Lenders

   a. BOK, NA $14,117,647.06
   b. Trustmark $10,558,235.29
   c. Eastman $2,117,647.06
   d. NBC Oklahoma $1,976,470.59

B. Bank of Oklahoma operating line of credit - $14,000,000(excluding Greenwood)

   1. Borrowers granting a general security interest to secure the loan:

      a. LTAC Hospital of Edmond, LLC
      b. LTAC Hospital of Wichita, LLC
      c. Albuquerque - AMG Specialty Hospital, LLC
      d. LTAC of Louisiana - Denham Springs, LLC
      e. LTAC of Louisiana, LLC
      f. Houma - AMG Specialty Hospital, LLC
      g. Central Indiana - AMG Specialty Hospital, LLC
      h. Tulsa - AMG Specialty Hospital, LLC
      i. Las Vegas - AMG Specialty Hospital, LLC

   2. Guarantors

      a. AMG Hospital Company, LLC
      b. AMG Hospital Company II, LLC
      c. Acadiana Management Group, LLC

   3. Lenders

      a. BOK, NA $6,862,744.00
      b. Trustmark $5,147,058.00
      c. Eastman $1,029,406.00
      d. NBC Oklahoma $960,792.00

C. Bank of Oklahoma operating line of credit for LTAC Hospital of Greenwood, LLC - $1,000,000.00

   1. Borrower granting security interest to secure the loan:

      a. LTAC of Greenwood, LLC

2. Guarantors

   a. AMG Hospital Company, LLC
   b. AMG Hospital Company II, LLC
   c. Acadiana Management Group, LLC
   d. AMG Realty I, LLC

3. Lenders

   a. BOK, NA $490,196.00
   b. Trustmark $367,647.00
   c. Eastman $73,529.00
   d. NBC Oklahoma $68,628.00

D. CHCT of Louisiana, LLC - real estate loan on Youngsville building - $11,000,000.00

1. Borrower granting mortgage and other security interest to secure the loan:

   a. AMG Realty Youngsville, LLC

2. Guarantors

   a. Acadiana Management Group, LLC
   b. AMG Hospital Company, LLC
   c. AMG Hospital Company II, LLC
   d. LTAC of Louisiana, LLC

18. Lastly, AMG and possibly other affiliates may be co-obligors on certain trade debts and leases incurred by the operating company affiliates.

## II. FIRST DAY MOTIONS

19. Concurrent with the filing of its Chapter 11 petition, the Debtors have filed the First Day Motions. The Debtors request that the relief sought in each of the First Day Motions described below be granted, as each request for relief constitutes a critical element in minimizing disruption in the Debtors' operations and maximizing value for the benefit of all parties in interest.

20.     The relief sought in the First Day Motions will diminish the adverse impact of the filing of this case on the Debtors, its employees, customers, and vendors. I believe that the relief sought in each of the First Day Motions is essential to enable the Debtors to make a seamless transition into Chapter 11 and operate effectively as a debtors-in-possession. The First Day Motions are tailored to address those matters that require urgent and immediate attention by this Court in order to sustain the value and the viability of the Debtors' operations and estate.

**A.     Emergency Motion for Order Pursuant to Bankruptcy Rule 1015(b) Directing Joint Administration of Chapter 11 Cases (the "<u>Joint Administration Motion</u>")**

21.     By this Motion, the Debtors request that their cases be jointly administered and consolidated for procedural purposes only. The Debtors submit that such relief is consistent with the Bankruptcy Code and the Bankruptcy Rules, and is in the best interest of Debtors and all parties in interest.

22.     Specifically, all of the Debtors, with the exception of AMG Realty Youngsville, LLC, are liable *in solido* for one or more of the Bank of Oklahoma syndicated lines of credit and/or the Bank of Oklahoma syndicated real estate loan.

23.     If the Debtors are not jointly administered, separate motions to use cash collateral will have to be filed in multiple different cases, and plan treatment for the Bank of Oklahoma syndicated lines of credit and real estate loan will have to be negotiated in separate cases.

24.     Further, AMG and other affiliates have guaranteed the debts of affiliates on the Bank of Oklahoma syndicated lines of credit and real estate loan, as well as the mortgage debt of CHCT Louisiana, LLC.

25.     The Debtors are "affiliates" as that term is defined in Bankruptcy Rule 101(2) and 1015(b). Joint administration would serve to avoid the preparation, replication, service, and filing,

as applicable, of duplicative notices, applications, and orders, thereby saving the Debtors considerable expense and resources. The rights of creditors will not be adversely affected as this Motion requests only administrative, and not substantive, consolidation of estates. Moreover, each creditor may still file its claim against a particular estate. Indeed, the rights of all creditors will be enhanced by the reduced costs that will result from the joint administration of these cases. The Court also will be relieved of the burden of entering duplicative orders and maintaining duplicative files. Finally, supervision of the administrative aspects of these chapter 11 cases by the United States Trustee for the Western District of Louisiana will be simplified.

26. In sum, joint administration is urgently needed. The administration of AMG Hospital Company, L.L.C.; AMG Hospital Company II, L.L.C.; Albuquerque - AMG Specialty Hospital, L.L.C.; Central Indiana - AMG Specialty Hospital, L.L.C.; Tulsa - AMG Specialty Hospital, L.L.C.; LTAC Hospital of Louisiana - Denham Springs, L.L.C.; Las Vegas - AMG Specialty Hospital, L.L.C.; LTAC Hospital of Greenwood, L.L.C.; LTAC of Louisiana, L.L.C.; Houma - AMG Specialty Hospital, L.L.C.; LTAC Hospital of Edmond, L.L.C.; LTAC Hospital of Wichita, L.L.C.; AMG Realty I, L.L.C.; CHFG Albuquerque, L.L.C.; and AMG Realty Youngsville, L.L.C., should be joined with the administration of Acadiana Management Group, L.L.C.

**B.    Application to Employ Attorneys**

27. The Debtors, Louisiana limited liability companies, are prohibited from self-representation in federal court and a lack of representation by counsel in any stage of these cases would constitute irreparable harm for purpose of F.R. B.P. 6003.

28. The Debtors, as debtors-in-possession, accordingly wish to employ Bradley L. Drell and the law firm of GOLD, WEEMS, BRUSER, SUES & RUNDELL (A Professional Law

Corporation) ("Gold"), as its attorneys under a general retainer to give the Debtors legal advice with respect to Debtors' powers and duties as debtors-in-possession in the continued operation of the debtors' business and management of the Debtors' property and to perform all legal services for the debtors-in-possession which may be necessary herein.

29. The Debtors have selected Bradley L. Drell and Gold for the reasons that they have gained experience as to the Debtors' business and property by assisting the Debtors in preparing to file the cases herein, and the Debtors believe that Bradley L. Drell and Gold are well qualified to represent Debtors, as debtors-in-possession, in this proceeding. Furthermore, it is necessary for the Debtors as debtors-in-possession to employ attorneys for such professional service.

30. To the best of the Debtors' knowledge, Bradley L. Drell and Gold have no connection with the Debtors, the creditors or any other party in interest or their respective attorneys and accountants, or the United States Trustee or any person employed in the Office of the United States Trustee , other than as disclosed in response to the last question on the Supplemental Schedule. To the best of the Debtors' knowledge, no attorney of Gold holds or represents an interest adverse to the Debtors and all attorneys are "disinterested" persons under the Bankruptcy Code.

31. The retainer received by Gold, the disbursements of the same pre-petition, and the remaining balance have been disclosed in accordance with law. Prior to filing, Gold was tasked with thirteen (13) merger transactions to reduce the number of bankruptcy cases that would need to be filed, preparation of petitions and creditor lists for sixteen (16) Chapter 11 cases, preparation of first day motions for the Debtors' cases, and other work associated with the filing of these cases.

32. For the foregoing reasons, the appointment of counsel as selected by the Debtors is necessary.

C. **Motion for Order Authorizing (I) Continued use of Existing Business Forms and Records; (ii) Maintenance of Existing Corporate Bank Accounts and Cash Management System; and (iii) Waiving Requirements of 11 U.S.C. § 345 (the "Business Accounts Motion").**

33. The Debtors request, pursuant to 11 U.S.C. §§ 105(a), 345(b), 363(c) and Fed. R. Bank Proc. 6003 and 6004, the entry of an order (i) authorizing Debtors to continue using their respective existing business forms and records; (ii) authorizing Debtors to maintain the Bank Accounts and Cash Management System; and (iii) in an abundance of caution, waiving, to the extent applicable, the requirements of 11 U.S.C. § 345(b).

34. The relief requested in the Motion is essential to facilitating a seamless transition into Chapter 11. Accordingly, the approval of the relief sought in the Motion is in the best interest of the Debtor's estate, its creditors, and all parties in interest.

D. **Motion of the Debtor for Entry of Order Authorizing Debtors to Pay Obligations Under Prepetition Insurance Policies; Renew Modify, or Purchase Insurance Coverage; and Honor the Terms of the Insurance Financing Agreements and Pay Premiums Thereunder (the "Insurance Motion")**

35. In connection with the operation and management of its business, the Debtors maintain numerous insurance policies for a variety of coverages across numerous facilities (the "Insurance Polices"). The continuation of the Insurance Policies is essential to the ongoing operation of the Debtors' business.

36. By the Insurance Motion, the Debtors request authority to continue the Insurance Policies uninterrupted and pay any pre- or post-petition amounts related to the Insurance Policies to the extent that the Debtors determine, in its discretion, that payment is necessary or appropriate.

E. **Debtors' Motion for Authority to Pay Prepetition Employee Wages, Compensation, and Employee Benefits (the "Wages Motion")**

37. To minimize the personal hardship that the Debtors' employees would suffer if prepetition employee-related obligations are not paid when due or as expected, and to maintain morale and stability in the Debtors' workforce during this critical time, by the Wages Motion, the Debtors seeks authority to pay and honor, in its sole discretion, certain prepetition claims for, among other items: wages, salaries, and other compensation, expense reimbursement, federal and state withholding taxes and other amounts withheld (including, garnishments, Employees' share of insurance premiums, taxes, and retirement contributions), health benefits, insurance benefits, workers' compensation benefits, vacation time, sick leave, life insurance, long-term and short- term disability coverage, floating holidays and all other benefits that the Debtor has historically provided in the ordinary course of business and to pay all costs incident to the foregoing.

38. In an abundance of caution, the Debtor requests the right to modify, change, and discontinue any of its employee compensation, programs, policies and benefits, and to implement new programs, policies and benefits in the ordinary course of business during this Chapter 11 case in its sole discretion without the need for further Court approval.

39. The Debtors' employees have been and continue to be critical to the Debtors' business. Accordingly, even in a difficult time, it is my belief that there is ample justification for the relief requested in the Wages Motion and that the granting of such relief is in the best interests of the Debtors, their estates, and all parties in interest to this case.

    **F.**     **Debtor's Motion for an Interim Order (a) Determining Adequate Assurance Payment for Debtors' Utility Services, and (b) Restraining Utilities from Altering, Disconnecting or Refusing the Debtors' Service, and (c) Scheduling a Final Hearing on the Interim Relief Sought (the "Utilities Motion")**

40. In the ordinary course of business, the Debtors obtain gas, electric, data/internet and other similar utility services provided by a number of utility companies (the "Utility Providers").

The Utility Providers service the Debtors' facilities across the country. Preserving utility services on an uninterrupted basis is essential to the Debtor's ongoing operations and reorganization efforts. Indeed, any interruption of utility services, even for a brief period of time, would disrupt the Debtors' ability to provide services to customers. Such a result could seriously jeopardize the Debtors' reorganization efforts and, ultimately, creditor recoveries. It is, therefore, critical that utility services continue uninterrupted during this Chapter 11 case.

41. By the Utilities Motion, the Debtors seek the entry of an order determining that its Utility Providers have been provided with adequate assurance of payment within the meaning of Section 366 of the Bankruptcy Code; approving the Debtors' proposed offer of adequate assurance and procedures whereby the Utility Providers may request additional or different adequate assurance; prohibiting the Utility Providers from altering, refusing, or discontinuing services on account of prepetition amounts outstanding and on account of any perceived inadequacy of the Debtors' proposed adequate assurance; establishing procedures for the Utility Providers to object to the Debtors' proposed adequate assurance procedures; and determining that the Debtor is not required to provide any additional adequate assurance beyond what is proposed by the Utilities Motion.

42. Such relief is necessary to enable the Debtors to continue their business operations uninterrupted by threats of potential termination of, suspension or interruption in utility services. Accordingly, I believe, and the Debtors submit, that the relief requested in the Utilities Motion is in the best interests of the Debtors, its estate and creditors, and all parties in interest and, as such, should be approved.

**G. Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code for Authorization to Pay Pre-Petition Claims of Critical Vendors (the "<u>Critical Vendor Motion</u>")**

43. In the ordinary course of business, the Debtors use certain vendors whose services are absolutely necessary to the continued operation of business (the "Critical Vendors"). The cessation of the services provided by such Critical Vendors would have an immediate negative impact on the Debtors' ability to generate revenue which would irreparably harm their operations and severely impede prospects for successful rehabilitation.

44. The services provided by the Critical Vendors must continue unabated during the pendency of the Debtors' Chapter 11 cases if substantial harm and loss of enterprise value is to be avoided. The interests of the Debtors and its estates and creditors will best be served if the Debtors are authorized to pay the claims of the Critical Vendors.

45. Section 105(a) of the Bankruptcy Code and the necessity of payment doctrine provides support for the relief requested, recognizing the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor.

46. Under these circumstances, approval of the payments is appropriate and necessary, and should be granted in all respects.

**H. Debtors' Motion for Emergency Order Authorizing Use of Cash Collateral and for Final Order After Hearing on the Use of Cash Collateral (the "Cash Collateral Motion")**

47. The Debtors seek judicial authorization to use cash which may be "cash collateral" as defined in 11 U.S.C. § 363 and Federal Rule of Bankruptcy Procedure 4001(b), and to further provide adequate protection retroactive to the Petition Date. The Debtors additionally seek an

emergency preliminary hearing on the Motion to consider entry of an interim order pursuant to Federal Rule of Bankruptcy Procedure 4001 approving the use of Cash Collateral and adequate protection for the same as to Respondents retroactive to the Petition Date.

48. The Debtors require use of the proceeds of all accounts receivable and cash on hand and in their bank accounts in the ordinary course of the Debtors' businesses to pay expenses of operations incurred during the course of these Chapter 11 proceedings.

49. The use of Cash Collateral is necessary to allow the Debtor's ongoing operations and reorganization efforts. Disallowing the use of Cash Collateral would seriously jeopardize the Debtors' reorganization efforts and, ultimately, creditor recoveries.

50. Accordingly, approval of the Debtors' request for authority to use Cash Collateral is payments is paramount to the survival of business operation, and should be granted.

### III. CONCLUSION

51. For all of the foregoing reasons and those more fully set forth in each of the First Day Motions, I respectfully request that each of the First Day Motions be granted in its entirety, together with such other and further relief as the Court may deem appropriate.

I certify under penalty of perjury that the foregoing is true and correct based upon my knowledge, information, and belief as set forth in this Declaration.

Dated: June 23, 2017

_____
August J. Rantz, IV
President, Acadiana Management Group, LLC