# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | § | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| ACADIANA MANAGEMENT GROUP, | § | Case No. 17-50799 |
| L.L.C., ET AL.[1] | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |

## OBJECTION TO FIRST AMENDED DISCLOSURE STATEMENT RELATING TO FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR ACADIANA MANAGEMENT GROUP, LLC, ET AL.

NOW INTO COURT, through undersigned counsel, comes CHCT Louisiana, LLC ("CHCT"), and files this Objection (the "Objection") to the *Debtors' First Amended Disclosure Statement Relating to First Amended Chapter 11 Plan of Reorganization for Acadiana Management Group, LLC, et al.* (the "Amended Disclosure Statement") [Dkt. #539] and states:

### Preliminary Statement

1. Approval of the Amended Disclosure Statement should be denied because it fails to provide adequate information per section 1125(a) of the Bankruptcy Code.

2. In addition, the Amended Disclosure Statement should be denied because the Amended Plan is patently unconfirmable. Among the reasons therefor, the Amended Plan impermissibly provides for substantive consolidation of the Debtor entities for voting and

---

[1] The debtors in these chapter 11 cases are AMG Hospital Company, L.L.C., Case No. 17-50800; AMG Hospital Company II, L.L.C., Case No. 17- 50801; Albuquerque - AMG Specialty Hospital, L.L.C., Case No. 17-50802; Central Indiana - AMG Specialty Hospital, L.L.C., Case No. 17-50803; Tulsa - AMG Specialty Hospital, L.L.C., Case No. 17-50804; LTAC Hospital of Louisiana - Denham Springs, L.L.C., Case No. 17-50805; Las Vegas - AMG Specialty Hospital, L.L.C., Case No. 17-50806; LTAC Hospital of Greenwood, L.L.C., Case No. 17-50807; LTAC of Louisiana, L.L.C., Case No. 17- 50808; Houma - AMG Specialty Hospital, L.L.C., Case No. 17-50809; LTAC Hospital of Edmond, L.L.C., Case No. 17-50810; LTAC Hospital of Wichita, L.L.C., Case No. 17-50811; AMG Realty I, L.L.C., Case No. 17-50812; CHFG Albuquerque, L.L.C., Case No. 17-50813; and AMG Realty Youngsville, L.L.C., Case No. 17-50814 (collectively, the "Debtors" and individually, a "Debtor").

distribution purposes. Despite a second opportunity to do so, the Debtors have not presented any justifiable basis for this extraordinary remedy.

3. Finally, the Amended Disclosure Statement cannot be approved because the Amended Plan proposes third-party releases in violation of existing Fifth Circuit law.

4. CHCT hereby incorporates the CHCT Initial Objection (as defined herein) as if set forth herein in its entirety and relies on the additional arguments set forth therein as further objection to the Amended Disclosure Statement and Amended Plan.

## Background

5. On June 23, 2017, the Debtors filed for bankruptcy relief under Chapter 11 of Title 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. CHCT believes that one or more of the Debtors' estates hold actionable claims against certain insiders, namely, August Joseph Rantz, III, August Joseph Rantz, IV, and Timothy W. Howard (the "Insiders") (notwithstanding the one-sided description of these causes of action in the Amended Disclosure Statement). On October 23, 2017, CHCT filed a *Motion for Leave to Derivatively Pursue Avoidance Action Against August Joseph Rantz, III, August Joseph Rantz, IV, and Timothy W. Howard* [Dkt. #406]. CHCT's motion has been denied without prejudice and the Committee has indicated that it may make a similar motion.

7. On November 17, 2017, the Debtors filed their *Chapter 11 Plan of Reorganization for Acadiana Management Group, LLC, et al.* [Dkt. #477] and related Disclosure Statement (the "Initial Disclosure Statement") [Dkt. # 477]. CHCT (the "Initial CHTC Objection") [Dkt. #485], Indiana University Health Ball Memorial Hospital, Inc. and Indiana

2

17-50799 - #558  File 12/15/17  Enter 12/15/17 16:49:02  Main Document  Pg 2 of 11

University Health Ball Memorial Physicians, Inc. [Dkt. #484], Sierra Home Medical Products, Inc. [Dkt. # 522] and the Committee [Dkt. # 524] each objected to approval of the Initial Disclosure Statement.

8. On November 28, 2017, the Court held a hearing on the adequacy of the Initial Disclosure Statement. The Court ordered the Debtors to file their Amended Disclosure Statement within ten days and continued the hearing thereon to December 19, 2017.

9. On December 8, 2017, the Debtors filed their *First Amended Chapter 11 Plan of Reorganization for Acadiana Management Group, LLC, Et Al.* (the "Amended Plan") [Dkt. #538][2] and the Amended Disclosure Statement.

**Objections**

**I.    The Amended Disclosure Statement Does Not Provide Adequate Information.**

10. The Amended Disclosure Statement must provide adequate information in order to be approved. 11 U.S.C. § 1125(a); *In re Woerner*, 783 F.3d 266, 271 (5th Cir. 2015). The Bankruptcy Code defines adequate information as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a).

11. Courts consider the following non-exhaustive list of factors when determining whether a disclosure statement contains adequate information:

        a) The circumstances that led to the filing of the bankruptcy petition;

        b) a complete description of the available assets and their value;

---

[2] Capitalized terms not defined herein have the meanings assigned in the Amended Plan.

c) the anticipated future of the debtor;

d) the source of the information provided in the disclosure statement;

e) a disclaimer, which typically indicates that no statement or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

f) the condition and performance of the debtor while in chapter 11;

g) the claims against the estate;

h) a liquidation analysis setting forth the estimated return that the creditors would receive under chapter 7;

i) the accounting and calculation methods used to produce the financial information and the name of the accountants responsible for such information;

j) the future management of the debtor;

k) a summary of the chapter 11 reorganization;

l) an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

m) the collectability of any accounts receivables;

n) any financial information, valuations, or projections relevant to the creditor's decision to accept or reject the plan;

o) information relevant to the risks posed to the creditors under the plan;

p) the actual or projected value from the recovery of preferential or otherwise voidable transfers;

q) the existence, likelihood, and possible success of non-bankruptcy litigation;

r) the plan's tax consequences; and

s) the relationship of the debtor with affiliates.

*In re U.S. Brass Corp.*, 194 B.R. 420, 425 (Bankr. E.D. Tex. 1996) (citing *In re Metrocraft Pub. Services, Inc.*, 39 B.R. 567, 568 (Bkrtcy. N.D. Ga. 1984)).

12. Whether a disclosure statement contains adequate information is generally determined on a case by case basis with great discretion left to the bankruptcy court. *In re Applegate Prop., Ltd.*, 133 B.R. 827, 829 (Bankr. W.D. Tex. 1991); *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir.1988).

13. The Debtors have failed to satisfy many of the factors above. The Amended Disclosure Statement provides woefully inadequate information with respect to the Debtors' proposal to substantively consolidate all of the Debtors' estates together. The Debtors have not provided any information as to the relative recoveries to the stakeholders of each of the Debtors' entities to enable them to compare whether they would obtain a better recovery under a substantively consolidated plan versus a non-consolidated plan.

## II. The Proposed Substantive Consolidation in Inappropriate.

14. The Court should not approve the Amended Disclosure Statement where the underlying plan is "patently unconfirmable." *See In re EQK Bridgeview Plaza, Inc.*, No. 10-37054-SGJ-l 1, 2011 WL 2458068, at *2 (Bankr. N.D. Tex. June 16, 2011) (declining to approve debtor's disclosure statement on the basis that the plan it described was patently unconfirmable); *see also In re US. Brass Corp.*, 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996) ("Disapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible."). To do so would be an exercise in futility. *See, e.g.*, *In re K Lunde, LLC*, 513 B.R. 587, 590 (Bankr. D. Colo. 2014) ("[T]he estate and parties should not bear the expense and effort required by the full

confirmation process if there is a fatal flaw that makes the plan unconfirmable as a matter of law."). A proposed Chapter 11 plan is "patently unconfirmable" where it "is so fatally and obviously flawed that confirmation is impossible." *In re Hawkes*, 289 B.R. at 294 (quoting *Bjolmes Realty Trust*, 134 B.R. at 1002).

15. The Debtors' Amended Plan is patently unconfirmable because of the proposed substantive consolidation. Substantive consolidation is an extraordinary, judicially-created remedy that the Fifth Circuit has observed should be seldom used. *See, e.g.*, *In re Amco Ins.*, 444 F.3d 690, 695 (5th Cir. 2006); *FDIC v. Colonial Realty Co.*, 966 F.2d 57, 61 (2d Cir. 1992); *Union Savings Bank v. Augie/Restivo Baking Company, Ltd. (In re Augie/Restivo Baking Company)*, 860 F.2d 515, 518 (2d Cir. 1988); *see also In re Owens Corning*, 419 F.3d 195, 208-09 (3d Cir. 2005); *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 767 (9th Cir. 2000); *Reider v. FDIC (In re Reider)*, 31 F.3d 1102, 1107 (11th Cir. 1994); *Flora Mir Candy Corp. v. R.S. Dickson & Co. (In re Flora Mir Candy Corp.)*, 432 F.2d 1060, 1062-63 (2d Cir. 1970); *In re Donut Queen, Ltd.*, 41 B.R. 706, 709 (Bankr. E.D.N.Y. 1984). CHCT incorporates hereby incorporates by reference its arguments set forth in the Initial CHTC Objection with regard to the proposed substantive consolidation.

16. Despite observations that substantive consolidation is a "rough justice" remedy, *Amco Ins.*, 444 F.3d 690, the Debtors devote significant attention to the recent case of *In re ADPT DFW Holdings, LLC*, 574 B.R. 87 (Bankr. N.D. Tex. 2017), in support of their claim for substantive consolidation. That case, however, is inapposite.

17. In *ADPT DFW Holdings, LLC*, the court found substantive consolidation appropriate principally because there were 140 debtors (which the court observed was "rare and create[d] unique challenges"), and *all* of the Debtors were liable for the $70 million DIP loan and

6

17-50799 - #558  File 12/15/17  Enter 12/15/17 16:49:02  Main Document  Pg 6 of 11

80 of the Debtors were liable for the $228 million prepetition secured debt (the remaining debtors being inactive, having no assets or having no material value). *Id.* at 101-02.

18. Here, by contrast, there are only 14 Debtors. There is no evidence that creditors dealt with the Debtors as a single economic unit or viewed them in such way. Indeed, the record reflects quite the opposite— the Debtors' prepetition lenders executed prepetition Loan Documents with specific Debtors, but not all of them. (Amended Disclosure Statement at pp. 12-13).

19. And, of the five (5) creditors appointed to the Committee, a review of the claims register maintained in the distinct Chapter 11 cases of all the Debtor entities indicates that *none* of these creditors filed a proof of claim against *all* of the Debtors. Rather, the creditors filed claims against the distinct entities to which they did business, including attaching line-item detail of the amounts owed *by that specific Debtor*. All of these transactions evidence a high degree of knowledge between the Debtors and their creditors/contract counterparties regarding which specific Debtor entities they were doing business with, and that such parties did not actually view the Debtors as a single economic unit.

20. There is also no evidence that the affairs of the Debtors are so entangled that consolidation will benefit the estates of all of the Debtors. As the Debtors have observed, they operate in a highly regulated industry, and are subject to oversight of various divisions within CMS, including without limitation, various state and local licensing agencies. The regulating authorities are looking at specific corporate entities in granting licenses and permits to operate.

21. The Debtors would not have any difficulty in segregating and ascertaining individual assets and liabilities of all Debtor entities. Indeed, the Debtors have already accomplished this task when they filed detailed schedules of assets and liabilities and statements

of financial affairs for each of the Debtor entities and by attaching detailed liquidation analysis to the Disclosure Statement by each Debtor entity.

22. In *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005), the Third Circuit rebuked the very "deemed" substantive consolidation or "substantive consolidation light" that the Debtors propose:

> If Debtors' corporate and financial structure was such a sham before the filing of the motion to consolidate, then how is it that post the proposed plan's effective date this structure stays largely undisturbed, with the Debtors reaping all the liability-limiting, tax and regulatory benefits achieved by forming subsidiaries in the first place? In effect, the plan proponents seek to remake substantive consolidation not as a remedy, but as a stratagem to "deem" separate resources reallocated to [one entity] to strip the Banks of rights under the Bankruptcy Code, favor other creditors, and yet trump possible Plan objections by the Banks. Such "deemed" schemes we deem not Hoyle.

419 F.3d at 216.

23. The facts in this case refute any argument in favor of substantive consolidation. The Debtors have not and cannot satisfy their substantial burden in justifying the extraordinary (and self-serving) remedy of substantive consolidation of the Debtors' estates. Accordingly, the Amended Plan cannot be confirmed and the Amended Disclosure Statement, therefore, should not be approved.

### III. The Nonconsensual Releases To The Insiders Are Improper.

24. Approval of the Amended Disclosure Statement should also be denied because the Amended Plan's nonconsensual releases in favor of the Insiders are prohibited under the express terms of the Bankruptcy Code and binding Fifth Circuit precedent. *Bank of New York Trust Co., NA v. Official Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229, 252-53 (5th Cir. 2009). CHCT incorporates hereby incorporates by reference its arguments set forth in the Initial CHTC Objection with regard to these improper releases.

8

25. The Amended Disclosure Statement fails to countenance the impropriety of these releases (as reflected, in part, by the acknowledgment that the Committee may seek to derivatively pursue claims against the Insiders).

26. Here, there are no extraordinary circumstances that justify the Court approving the proposed releases. *See, e.g.*, *id.* at 252-53 ("[T]he essential function of the exculpation clause proposed here is to absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy. The fresh start § 524(e) provides to debtors is not intended to serve this purpose."); *In re SunEdison, Inc.*, et. al., Case No. 16-10992-SMB (Bankr. S.D.N.Y. Nov. 8, 2017) (discussed in Initial CHTC Objection). The alleged "new value" from the Insiders is suspect. While they may contribute up to $3 million of cash to keep the Debtors operating through confirmation, the Insiders' debt of $2.6 million on the non-Debtor Affiliates will be paid through this process. The argument that the Insiders are providing value for both releases and as alleged new value is illusory and further evidence of the breach of the Debtors' fiduciary duties to these estates.

27. Further, the Debtors have not argued, nor can they, that this Court has jurisdiction to enter third party releases against the Insiders. Simply put, the Debtors have not come close to sustaining their burden of proving that the Court has subject matter jurisdiction to approve the releases. Even if this Court had subject matter jurisdiction to consider such third party releases, which it does not, the Debtors have failed to sustain their burden of proving rare or unique circumstances exist in this case.

## **Reservation of Rights**

28. CHCT continues to analyze and review the Amended Disclosure Statement, the Amended Plan and documentation in support of the foregoing, and reserves all rights in

9

17-50799 - #558  File 12/15/17  Enter 12/15/17 16:49:02  Main Document  Pg 9 of 11

connection with approval of any disclosure statement and confirmation of any proposed plan. This objection is submitted without prejudice to, and with a full reservation of, CHCT's rights to supplement or amend this objection. Nothing herein is intended to be a waiver by CHCT of any right, objection, argument, claim, or defense with respect to any matter, including any matters in respect of the Amended Disclosure Statement and the Amended Plan, all of which are hereby expressly preserved.

Dated: December 15, 2017

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

By: */s/ Lacey E. Rochester*
    Jan M. Hayden
    Louisiana Bar No. 6672
    Louisiana Bar No. 18767
    Lacey Rochester
    Louisiana Bar No. 34733
    201 St. Charles Avenue, Suite 3600
    New Orleans, Louisiana 70170
    Telephone: (504) 566-5200
    Facsimile: (504) 636-4000
    jhayden@bakerdonelson.com

   **AND**

   Timothy M. Lupinacci
   Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
   *(admitted pro hac vice)*
   Alabama State Bar No. 7626-L64T
   420 20th Street North, Suite 1400
   Birmingham, AL 35203
   Telephone: (205) 328-0480
   Facsimile: (205) 322-8007
   Email: tlupinacci@bakerdonelson.com

   *Counsel for CHCT Louisiana, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2017, a true and correct copy of the foregoing was served by Electronic Case Filing system for the United States Bankruptcy Court for the Western District of Louisiana.

Dated: December 15, 2017                /s/ *Lacey E. Rochester*