# CHCT-AMG CONFIDENTIAL SETTLEMENT TERM SHEET AND BANKRUPTCY EXIT FINANCING PLAN ("TERM SHEET")
December 13, 2017

A. **Background**

1. On June 23, 2017 ("Petition Date"), AMG Hospital Company, L.L.C. (Case No. 17-50800), AMG Hospital Company II, L.L.C. (Case No. 17-50801), Albuquerque - AMG Specialty Hospital, L.L.C. (Case No. 17-50802), Central Indiana - AMG Specialty Hospital, L.L.C. (Case No. 17-50803), Tulsa - AMG Specialty Hospital, L.L.C. (Case No. 17-50804), LTAC Hospital of Louisiana - Denham Springs, L.L.C. (Case No. 17-50805), Las Vegas - AMG Specialty Hospital, L.L.C. (Case No. 17-50806), LTAC Hospital of Greenwood, L.L.C. (Case No. 17-50807), LTAC of Louisiana, L.L.C. (Case No. 17- 50808), Houma - AMG Specialty Hospital, L.L.C. (Case No. 17-50809), LTAC Hospital of Edmond, L.L.C. (Case No. 17-50810), LTAC Hospital of Wichita, L.L.C. (Case No. 17-50811), AMG Realty I, L.L.C. (Case No. 17-50812), CHFG Albuquerque, L.L.C. (Case No. 17-50813), and AMG Realty Youngsville, L.L.C. (Case No. 17-50814)(collectively, the "Debtors" and individually, a "Debtor") each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Louisiana (the "Bankruptcy Court").

2. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to Bankruptcy Code §§1107 and 1108. No trustee or examiner has been appointed. On July 28, 2017, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "UCC").

3. On November 17, 2017, the Debtors filed a Disclosure Statement Disclosure Statement Relating to Chapter 11 Plan of Orderly Liquidation for Acadiana Management Group, L.L.C., et al. (the "Disclosure Statement") describing that certain Plan of Reorganization for Acadiana Management Group, L.L.C., et al. (the "Plan"). On November 21, 2017, CHCT Louisiana, LLC ("CHCT") filed an Objection to the Disclosure Statement. On December 8, 2017, the Debtors filed an Amended Disclosure Statement and Amended Plan of Reorganization.

B. **Agreement**

4. The terms and conditions outlined herein are not all inclusive and shall be subject to execution of documents incorporating the terms and conditions of this Term Sheet, including without limitation the CHCT Debt Financing Loan Documents (as defined herein). This Term Sheet is intended to outline a plan for the Debtors to exit bankruptcy, including a bridge to a normal financing and corporate structure. For purposes of this Term Sheet, Debtors and CHCT agree to basic framework of exit financing and settlement set forth herein.

1

5. Debtors will revise the Amended Disclosure Statement, if necessary (the "Revised Amended Disclosure Statement") and Amended Plan (the "Revised Amended Plan") will be to incorporate the terms and conditions of this Term Sheet. The Revised Amended Plan will provide for the exit from bankruptcy and the transfer of the ownership of the Debtors into a new restructured entity ("NEWCO") owned and operated by August J. Rantz III ("Rantz III"), August J. Rantz IV ("Rantz IV") and Timothy W. Howard ("Howard", and together with Rantz III and Rantz IV, collectively, the "NEWCO Principals"). The implementation of NEWCO will occur upon the entry of an order of the Bankruptcy Court confirming the Revised Amended Plan (the "Confirmation Order") and the occurrence of the effective date of the Revised Amended Plan (the "Plan Effective Date").

6. As part of the Revised Plan, CHCT will waive any deficiency claim for purposes of distributions to general unsecured creditors under the Revised Plan, for both CHCT's claim and the BOKF Revolving Debt that it purchases.

7. As part of the Revised Amended Plan and in order to fund operations of NEWCO post-bankruptcy, CHCT will fund NEWCO debt as described herein up to a total amount of $23,000,000 (the "CHCT Debt") comprised of (i) the purchase of the Bank of Oklahoma ("BOKF") revolving loan debt (the "BOKF Revolving Debt") for a purchase price of up to $9,000,000, (ii) the payment of CHCT deficiency claim of up to $6,700,000 (the "CHCT Deficiency Claim") and (iii) additional incremental CHCT debt financing of $7,300,000, subject to the Sources and Uses as shown herein. NEWCO Principals will contribute to NEWCO its 50% and 100% equity interests, respectively in the non-debtor hospitals at North Alabama and Covington, and Rantz III will make the UCC Contribution (as defined below)(collectively, the "NEWCO Principal Contribution").

8. In order to secure repayment of the CHCT Debt, CHCT will maintain a first priority security interest on all NEWCO and NEWCO's subsidiaries ownership interests and assets, including without limitation, all accounts receivable, equipment, tenant improvements, licenses, provider agreements, and subject only to existing equipment leases that are not paid in full.

9. The CHCT Debt will include no pre-payment penalty or premium, closing costs or facility fees.

10. The CHCT Debt will accrue interest as follows:

    a. During the initial three year period following the Effective Date (the "Interim Period"), the outstanding balance of the CHCT Debt will accrue interest at the rate of 9.0% per annum, with 5.0% of the interest being paid current and 4.0% accrued.

    b. Following the Interim Period, the outstanding balance of the CHCT will accrue interest at the rate of 9.00% per annum, with 6.00% of the interest

2

being paid current and 3% accrued, subject to the adjustments as outlined in c. below.

    c. Following the Interim Period, for any year the outstanding principal balance of the CHCT Debt is more than (i) $10 million, the total pay interest rates shall be increased by 0.75%, or (ii) $5 million the total and current pay interest rates shall be increased by 0.25%.

11. The CHCT Debt will have a maturity date that is 13 years following the Effective Date. The CHCT Debt will be interest only during the Interim Period, subject to Repayment Provision (as defined herein). Following the Interim Period, principal and interest on the outstanding balance of the CHCT will be repaid using a 10-year amortization as described herein.

12. Cash flow generated by NEWCO after the Effective Date will be used to pay expenses and debt in accordance with the following waterfall:

    a. Current NEWCO operating expenses pursuant to normal payables management.
    b. Cash interest due to CHCT under the CHCT Debt.
    c. Payment of cash taxes due by NEWCO Principal Payments in accordance with the Tax Payment Agreement (as defined below).
    d. Catch up of any prior period accrued interest due to CHCT under the CHCT Debt
    e. Payment of any prior period normal amortization due to CHCT (applicable only during 10-year amortization period) such that after such payment, and cumulative through the date of such payment, the annual normal principal amortization paid for the period following the Interim Period is equal to $2,300,000 per year.
    f. Principal payment of current year amortization due to CHCT equal to the lesser of (i) $2,300,000; and (ii) cash flow generated by NEWCO during the applicable year after deducting for items 12(a) through 12(e) described above.
    g. After payments described in 12(a) through 12(f), principals and CHCT shall be entitled to distributions/debt payment in accordance with Agreed Distribution (as defined below).

13. NEWCO organizational documents (collectively, the "NEWCO Organizational Documents") shall have bankruptcy remote features, including without limitation unanimous board or member manager approval for major items. CHCT to have $1,000 redeemable equity interest (the "Redeemable Equity") with the right to appoint 1 independent board member or member manager (the "Board Position"). The Redeemable Equity shall have no rights associated with it beyond the appointment of the Board Position, and shall have no economic value beyond the $1,000 redemption value. The Redeemable Equity will be redeemed by NEWCO when the CHCT Debt is paid off in full.

3

14. The loan documents evidencing the CHCT Debt (collectively, the "NEWCO Loan Documents") shall include normal and customary loan covenants, including financial covenants, provided however, that such financial covenants will not be applicable or tested during the first two years following the Effective Date. The NEWCO Loan Documents shall have normal and customary reporting requirements including provision of audited financial statements.

15. NEWCO will pay taxes due by NEWCO Principals based on Taxable Income due to "pass through" income of NEWCO (the "Tax Payment Agreement"). The payment of taxes under the Tax Payment Agreement will be made by NEWCO when due based on quarterly estimates and final year-end reconciliation, for the actual tax obligations for NEWCO Principals, subject to NEWCO independent CPA certification and CHCT review in advance of the payment, amounts required to be paid with returns and work papers provided to CHCT with enough time to perform its review.

16. NEWCO will limit bonuses/equity distributions to NEWCO Principals as follow (the "Agreed Distribution"):

    a. No bonuses or distributions shall permitted unless all accrued interest due to CHCT is paid in cash.

    b. Once all accrued interest is paid in cash to CHCT, NEWCO can make distributions provided that it includes a catch up 1:2 pay down of CHCT Debt for all previous tax distributions pursuant to the Tax Payment Agreement and a corresponding 2:1 pay down of CHCT Debt and bonuses subject to the terms herein (collectively the "Debt Repayment"). By way of example, if through the date of a proposed distribution, the Principals have received tax distributions in the amount of $10mm, then before any such non-tax distributions can be made to the Principals, $5mm of principal repayment shall be first be made to the CHCT debt in satisfaction of the 1:2 requirement. Assuming such $5mm repayment is made, then the Principals shall be entitled to $1 of non-tax distribution for every $2 of additional CHCT debt pay down that is made unrelated to such tax-based repayments

17. NEWCO Principals shall enter into employment agreements with NEWCO, with normal and customary provisions.

    a. Salaries for the NEWCO Principals will be equal to an aggregate amount of $1,250,000 annually ($500,000 for Rantz IV, $500,000 for Howard, $250,000 for Rantz III).

    b. Compensation amounts shall not be increased without unanimous board or member manager approval.

4

4850-8250-3512 v2
2934797-000004 12/14/2017

c.  Bonuses shall be allowed – with an aggregate $500,000 limit and subject to a 1:1 debt paydown – to the extent audited EBITDA exceeds Exit Plan EBITDA (as of November 22, 2017) as follows:

|      |              |                 |
|------|--------------|-----------------|
| i.   | 0% to 5%     | – 10% of salary |
| ii.  | 5.01% to 10% | – 20% of salary |
| iii. | 10.01% to 15%| – 30% of salary |
| iv.  | Over 15%     | – 40% of salary |

18. CHCT will consider funding "growth investments", in the consolidated structure, on a case by case basis

19. Rantz III will contribute $250,000 to NEWCO to fund a lump sum payment to the UCC for distribution to allowed general unsecured creditors (the "GUC Contribution"). Any settlement with the UCC will include a lump sum cash payment, assignment of avoidance actions and waiver of deficiency claims.

20. The Sources and Uses for the Revised Plan financing and exit is contemplated as follows (the "Agreed Sources and Uses"):

### AMG Exit Plan Sources and Uses

| | |
|---|---:|
| CHCT Debt | 23,000,000 |
| Minimum Equity - Contribution of N. Alabama & Covington Hospitals - See attached Exhibit A | |
| Gus Rantz III - UCC Contribution | 250,000 |
| **Total Sources** | **23,250,000** |
| | |
| BOKF - Up to | 9,000,000 |
| CHCT - Up to | 6,700,000 |
| Administative Expenses - Up to | 1,500,000 |
| UCC - Up to | 250,000 |
| DIP Financing - Up to | 2,000,000 |
| Repay FB&T - Up to | 2,600,000 |
| Minimum NEWCO Liquidity | 500,000 |
| Capital Lease and Equipment Notes | 700,000 |
| **Total Uses** | **23,250,000** |

21. The Debtors, NEWCO Principals and CHCT agree that the parties will work in good faith and use best efforts to maintain the Uses line item within the parameters set forth in the Agreed Sources and Uses, provided however, that the parties have flexibility with regard to actual uses required under the UCC, DIP Financing and Administrative Expenses line items (the "Flexible Expense Items") to the extent the actual expended figure exceeds the designated line item. To the extent that any amount exceeds the designated line item for the Flexible Expense Items, the Uses line item for Capital Lease and Equipment Notes shall be reduced to cover the additional use of funds for the Flexible Expense Items. It is anticipated that NEWCO's opening balance sheet will look substantially as shown on Exhibit A.

22. On the Effective Date, CHCT will release the NEWCO Principals from any and all claims relating to actions or omissions occurring prior to the Effective Date, including without limitation any and all avoidance actions. NEWCO Principals will release CHCT from any and all claims relating to actions or omission occurring prior to the Effective Date.

23. Debtors will file the Revised Amended Disclosure Statement, if necessary, and Revised Amended Plan outlining the terms and conditions set forth in this Term Sheet (collectively, the "Plan Documents"). Upon submission of the Plan Documents, CHCT shall support confirmation of the Revised Amended Plan.

24. CHCT must approve the terms of the order entered confirming the Revised Amended Plan (the "Confirmation Order"). The Confirmation Order will provide that Debtors and NEWCO Principals shall release, acquit and discharge CHCT and its officers, directors, agents, employees, successors and assigns from any and all liabilities, claims, demands, actions or causes of action of any kind or nature through the date on which the Bankruptcy Court enters the Confirmation Order

25. The parties will execute loan documents, NEWCO organization documents and employment documents implementing this Term Sheet in form and content acceptable to CHCT and the NEWCO Principals (collectively, the "CHCT Debt Financing Loan Documents"). The Parties may require other general terms and conditions in the CHCT Debt Financing Loan Documents as may be reasonably required to implement the terms of this Term Sheet. The parties agree to cooperate with each other in good faith in connection with and shall use commercially reasonable efforts to effect the terms of this Term Sheet including the negotiation and drafting of the CHCT Debt Financing Loan Documents.

26. Nothing contained herein shall modify the current agreement of the Debtors and CHCT with regard to the title to the Youngsville real and personal property, which Debtors have agreed to transfer to CHCT by dation, consensual foreclosure and/or other process requested by CHCT.

27. CHCT's agreement to the terms of this Term Sheet are subject to due diligence to be provided as soon as possible by Alvarez & Marsal ("A&M"). Debtors and their professionals agree to cooperate with A&M with the provision of information and other diligence needed for CHCT to complete its analysis (the "CHCT Due Diligence"). CHCT will use its best efforts to complete the CHCT Due Diligence on or before 5 p.m. Central Time on December 31, 2017 (the "Due Diligence Period"). If CHCT does not provide written notice terminating the Term Sheet during the Due Diligence Period, the Term Sheet shall be binding on the parties, subject to a Terminating Event (as defined below). If CHCT provides notice terminating the Term Sheet during the Due Diligence Period, the terms and conditions of this Term Sheet shall be null and void.

28. This Term Sheet may be executed in as many counterparts as may be convenient or required. All counterparts shall collectively constitute a single instrument. For purposes of executing this Term Sheet, a document signed and transmitted by e-mail, facsimile machine or telecopier shall be treated as an original document. The email signature of any party thereon shall be considered an original signature, and the document transmitted shall be considered to have the same binding legal effect as an original signature on an original document. No party hereto may raise the use of a facsimile machine, telecopier or email or the fact that any signature was transmitted through the use of email or a facsimile or telecopier machine as a defense to the enforcement of this Term Sheet or any amendment executed in compliance herewith.

29. This Term Sheet supersedes any and all other discussions and agreements (written or oral) between Debtors and CHCT with respect to the transaction contemplated herein and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties.

30. This Term Sheet shall not be amended except by a writing signed on behalf of the party to be charged with such amendment.

31. No person or entity not a party to this Term Sheet shall have any third party beneficiary claim or other right hereunder or with respect thereto.

32. If the Bankruptcy Court fails to approve the Plan Documents implementing this Term Sheet or fails to enter the Confirmation Order approving a Plan implementing this Term Sheet, or the parties cannot reach agreement on the terms and conditions of the CHCT Debt Financing Loan Documents in good faith (each, a "Terminating Event"), the Term Sheet will terminate and all parties will reserve any and all rights, claims and actions as if this Term Sheet had not been executed. Nothing herein shall constitute a waiver of any and all of CHCT's rights and CHCT specifically reserves all remedies, actions, claims and other rights thereunder in the event of a Terminating Event.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

AGREED AND ENTERED THIS 14th DAY OF DECEMBER, 2017.

**DEBTORS:**

**ACADIANA MANAGEMENT GROUP, L.L.C.**, for itself and for all Debtors

By: _____

Name: _August J. Rantz, IV_

Its: _President_


**NEWCO PRINCIPALS:**

_____
AUGUST J. RANTZ III

_____
AUGUST J. RANTZ IV

_____
TIMOTHY W. HOWARD


**CHCT LOUISIANA, LLC:**

By: _____

Name: _____

Its: _____

8

AGREED AND ENTERED THIS ___ DAY OF DECEMBER, 2017.

**DEBTORS:**

**ACADIANA MANAGEMENT GROUP, L.L.C.**, for itself and for all Debtors

By: _____

Name: _____

Its: _____

**NEWCO PRINCIPALS:**

_____
AUGUST J. RANTZ III

_____
AUGUST J. RANTZ IV

_____
TIMOTHY W. HOWARD

**CHCT LOUISIANA, LLC:**

By: _____/s/ Timothy Wallace_____

Name: _____Timothy Wallace_____

Its: _____President_____

8

4850-8250-3512 v2
2934797-000004 12/13/2017

# EXHIBIT A
# Estimated Opening Consolidating Balance Sheet

**NEWCO**
*Estimated January 1, 2018 Summary Balance Sheets*

|  | Debtors | | | | | | | | | Non-Debtors | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | Albuquerque | Central Indiana | Edmond | Houma | Lafayette | Las Vegas | AMG | Interco/ Consolidation | Sub-Total | North Alabama | Covington | Financing Adjustments | Consolidated |
| Cash | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 260,439 | $ 179,201 | $ 60,360 | $ 500,000 |
| Discharged A/R | 1,432,498 | 1,509,722 | 1,113,766 | 1,305,804 | 1,243,374 | 1,178,489 | - | - | 7,783,653 | 1,130,030 | 957,766 | - | 9,871,450 |
| In-House A/R | 540,605 | 661,297 | 617,087 | 394,786 | 531,478 | 347,730 | - | - | 3,092,984 | 511,087 | 240,213 | - | 3,844,283 |
| Prepaids | 119,728 | 309,564 | 341,067 | 144,314 | 87,255 | 83,273 | 122,159 | - | 1,207,360 | 35,319 | 46,500 | - | 1,289,179 |
| FF&E | 397,696 | 247,379 | 662,822 | 239,077 | 410,839 | 359,772 | 222,390 | - | 2,539,974 | 302,207 | 418,910 | - | 3,261,091 |
| Tenant Improvements | 427,163 | 87,664 | 552,553 | - | 2,172,394 | 28,972 | 142,588 | - | 3,411,334 | 9,181 | 5,483 | - | 3,425,999 |
| Other - Insurance Collateral | 110,205 | 142,581 | 168,170 | 118,342 | 109,489 | 70,789 | 343,559 | - | 1,063,134 | 50,330 | 75,775 | - | 1,189,239 |
| Goodwill | (866,019) | 3,062,419 | (2,793,589) | 184,552 | 397,046 | (405,900) | (2,328,822) | 1,500,000 | (1,250,315) | 7,997,032 | 2,934,276 | - | 9,680,994 |
| **Total Assets** | **$ 2,161,875** | **$ 6,020,625** | **$ 661,875** | **$ 2,386,875** | **$ 4,951,875** | **$ 1,663,125** | **$ (1,498,125)** | **$ 1,500,000** | **$ 17,848,125** | **$ 10,295,625** | **$ 4,858,125** | **$ 60,360** | **$ 33,062,235** |
| | | | | | | | | | | | | | |
| Post-Petition A/P | $ 283,492 | $ 273,412 | $ 170,463 | $ 426,328 | $ 92,187 | $ 28,807 | $ 537,422 | $ - | $ 1,812,111 | $ 1,179,853 | $ 136,945 | $ - | $ 3,128,910 |
| Critical Vendor Amounts Due | 53,930 | 1,953,981 | 353,955 | 147,779 | 148,268 | 215,651 | 45,598 | - | 2,919,162 | - | - | - | 2,919,162 |
| Capital Lease and Equipment Notes | 252,049 | 106,893 | 342,213 | 114,383 | 113,771 | 145,889 | 103,597 | - | 1,178,794 | 128,080 | 265,544 | (912,328) | 660,089 |
| FB&T Debt | - | - | - | - | - | - | - | - | - | 1,477,312 | 1,100,000 | (2,577,312) | - |
| BOKF Debt | | | | | | | 9,000,000 | - | 9,000,000 | - | - | (9,000,000) | - |
| DIP Financing | | | | | | | 2,000,000 | - | 2,000,000 | - | - | (2,000,000) | - |
| UCC Debt | | | | | | | 250,000 | | 250,000 | - | - | (250,000) | - |
| Administrative Payables | | | | | | | 1,500,000 | | 1,500,000 | - | - | (1,500,000) | - |
| CHCT Debt | - | - | - | - | - | - | 6,700,000 | - | 6,700,000 | - | - | 16,300,000 | 23,000,000 |
| Equity | 1,572,403 | 3,686,340 | (204,756) | 1,698,385 | 4,597,650 | 1,272,778 | (21,634,741) | 1,500,000 | (7,511,942) | 7,510,379 | 3,355,636 | - | 3,354,073 |
| **Total Liabilities** | **$ 2,161,875** | **$ 6,020,625** | **$ 661,875** | **$ 2,386,875** | **$ 4,951,875** | **$ 1,663,125** | **$ (1,498,125)** | **$ 1,500,000** | **$ 17,848,125** | **$ 10,295,625** | **$ 4,858,125** | **$ 60,360** | **$ 33,062,235** |
| | | | | | | | | | | | | | |
| **Projected EBITDA (000)** | | | | | | | | | | | | | |
| 2018 EBITDA | 475 | 1,481 | (7) | 480 | 893 | 143 | (318) | 413 | 3,560 | 2,117 | 1,300 | - | 6,977 |
| 2019 EBITDA | 678 | 1,730 | 360 | 793 | 1,748 | 744 | (481) | 387 | 5,959 | 3,374 | 1,291 | - | 10,624 |
| Average 2 year EBITDA | 577 | 1,606 | 177 | 637 | 1,321 | 444 | (400) | 400 | 4,760 | 2,746 | 1,296 | - | 8,801 |
| | | | | | | | | | | | | | |
| Implied Value at 3.75X Average EBITDA | 2,161,875 | 6,020,625 | 661,875 | 2,386,875 | 4,951,875 | 1,663,125 | (1,498,125) | 1,500,000 | 17,848,125 | 10,295,625 | 4,858,125 | - | 33,001,875 |
| | | | | | | | | | | | | | |
| Implied Equity (Value-Liabilities) | 1,572,403 | 3,686,340 | (204,756) | 1,698,385 | 4,597,650 | 1,272,778 | (21,634,741) | 1,500,000 | (7,511,942) | 7,510,379 | 3,355,636 | - | 3,354,073 |

1