# AMENDED AND RESTATED
# CHCT-AMG CONFIDENTIAL SETTLEMENT TERM SHEET
# AND BANKRUPTCY EXIT FINANCING PLAN ("CHCT TERM SHEET")
February 19, 2018

**A.** **Background**

1. On June 23, 2017 ("Petition Date"), Acadiana Management Group, L.L.C. (Case No. 17-50799); AMG Hospital Company, L.L.C. (Case No. 17-50800), AMG Hospital Company II, L.L.C. (Case No. 17-50801), Albuquerque - AMG Specialty Hospital, L.L.C. (Case No. 17-50802), Central Indiana - AMG Specialty Hospital, L.L.C. (Case No. 17-50803), Tulsa - AMG Specialty Hospital, L.L.C. (Case No. 17-50804), LTAC Hospital of Louisiana - Denham Springs, L.L.C. (Case No. 17-50805), Las Vegas - AMG Specialty Hospital, L.L.C. (Case No. 17-50806), LTAC Hospital of Greenwood, L.L.C. (Case No. 17-50807), LTAC of Louisiana, L.L.C. (Case No. 17- 50808), Houma - AMG Specialty Hospital, L.L.C. (Case No. 17-50809), LTAC Hospital of Edmond, L.L.C. (Case No. 17-50810), LTAC Hospital of Wichita, L.L.C. (Case No. 17-50811), AMG Realty I, L.L.C. (Case No. 17-50812), CHFG Albuquerque, L.L.C. (Case No. 17-50813), and AMG Realty Youngsville, L.L.C. (Case No. 17-50814)(collectively, the "Debtors" and individually, a "Debtor") each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Louisiana (the "Bankruptcy Court").

2. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to Bankruptcy Code §§1107 and 1108. No trustee or examiner has been appointed. On July 28, 2017, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "UCC") to represent the interests of the Debtors general unsecured creditors (collectively, the "GUCS").

3. On November 17, 2017, the Debtors filed a Disclosure Statement Relating to Chapter 11 Plan of Orderly Liquidation for Acadiana Management Group, L.L.C., et al. (the "Disclosure Statement") describing that certain Plan of Reorganization for Acadiana Management Group, L.L.C., et al. (the "Plan"). On November 21, 2017, CHCT Louisiana, LLC ("CHCT") filed an Objection to the Disclosure Statement. On December 8, 2017, the Debtors filed an Amended Disclosure Statement and Amended Plan of Reorganization.

4. On December 13, 2017, Debtors and CHCT executed a Confidential Settlement Term Sheet and Bankruptcy Exit Financing Plan (the "Original Term Sheet"). Under the Original Term Sheet, CHCT agreed to purchase the purchase from the Bank of Oklahoma ("BOKF") BOKF's revolving loan debt with the Debtors (the "BOKF Revolving Debt"). CHCT closed on the purchase of the BOKF Revolving Debt on December 29, 2017 for a purchase price of $8,750,000.00 (the "CHCT RLOC Debt").

1

5. BOKF also holds certain term loans secured by real property owned by the Debtors (the "BOKF Real Property Collateral"). Based on certain appraisals of the BOKF Real Property Collateral, in addition to its secured claim against the BOKF Real Property Collateral, BOKF holds an unsecured deficiency claim in the amount of $11,292,763.30 (the "BOKF Deficiency Claim").

6. Based on the terms of the Original Term Sheet, Debtors filed on January 11, 2018 their Immaterially Modified Fourth Amended Disclosure Statement (the "Revised Disclosure Statement") describing the Fourth Amended Chapter 11 Plan of Reorganization (the "Revised Plan"). The Revised Plan incorporates the terms and conditions of the Original Term Sheet.

7. On January 29, 2018, at the request of the NEWCO Principals (as defined below) and in accordance with the terms and conditions of that certain Term Sheet between Debtors and CHCT dated January 19, 2018 (the "FBT Takeout Term Sheet"), CHCT purchased certain loan documents and debt held by First Bank and Trust ("FBT") relating to Covington-AMG Rehabilitation Hospital, L.L.C. ("Covington") and North Alabama-AMG Specialty Hospital, L.L.C. ("North Alabama"). Covington and North Alabama are not Debtors in the Bankruptcy Case. As a result, CHCT is the holder and owner of the FBT loan documents and debt (the "CHCT FBT Debt") relating to Covington and North Alabama. All terms and conditions of the FBT Takeout Term Sheet are incorporated herein by reference and remain in full force and effect.

8. The UCC opposed confirmation of the Revised Plan and recommended that the Debtors unsecured creditors vote against confirmation of the Revised Plan. The GUCS filed claims in the Bankruptcy Cases in an amount exceeding $16,400,000 (the "Filed Claims"). The Debtors maintain objections to the Filed Claims. The Debtors believe that the allowed amount of GUCS' claims in the case, other than the BOKF Deficiency Claim and claims of critical vendors, will total $10,800,000 (the "Trade Claims").

9. The Debtors have negotiated with the UCC a resolution of its objections to the Plan (the "UCC Settlement") and has negotiated a resolution with BOKF on the treatment of BOKF's Deficiency Claim (the "BOKF Settlement"). The UCC Settlement and the BOKF Settlement will permit the Debtors to proceed to modify and amend the Revised Plan (the "Amended Revised Plan") and to secure the UCC's support for confirmation of the Amended Revised Plan.

10. In order to accomplish, the UCC Settlement and the BOKF Settlement, the Debtors and CHCT reached an agreement to modify the Original Term Sheet. The Debtors and CHCT have agreed to modify the Original Term Sheet on the terms and conditions set forth and incorporated herein.

B. **Agreement**

11. The terms and conditions outlined herein are not all inclusive and shall be subject to execution of documents incorporating the terms and conditions of this CHCT Term

2

4852-8352-4189 v2
2934797-000004 02/19/2018

Sheet, including without limitation the Amended Revised Plan, the Confirmation Order, and the CHCT Debt Financing Loan Documents (as defined herein). The terms of the Amended Revised Plan, the Confirmation Order and the CHCT Debt Financing Loan Documents must be in form and content acceptable to CHCT. This CHCT Term Sheet is intended to outline a plan for the Debtors to exit bankruptcy, including a bridge to a normal financing and corporate structure. For purposes of this CHCT Term Sheet, Debtors and CHCT agree to this structure of exit financing and settlement set forth herein.

12. Debtors will file the Amended Revised Plan incorporating the terms and conditions of the UCC Settlement, the BOKF Settlement and this CHCT Term Sheet. The Amended Revised Plan will provide for the exit from bankruptcy and the transfer of the ownership of the Debtors into a new restructured entity ("NEWCO") owned and operated by August J. Rantz III ("Rantz III"), August J. Rantz IV ("Rantz IV") and Timothy W. Howard ("Howard", and together with Rantz III and Rantz IV, collectively, the "NEWCO Principals"). The transfer of assets to NEWCO and the closing of the CHCT Exit Financing will occur upon the entry of an order of the Bankruptcy Court confirming the Amended Revised Plan (the "Confirmation Order") and the occurrence of the effective date of the Amended Revised Plan (the "Plan Effective Date").

13. As part of the Amended Revised Plan, CHCT will waive any deficiency claim for both the unsecured claims held by CHCT based on (i) CHCT's own deficiency claim that is assumed into the CHCT Exit Financing, and (ii) CHCT's deficiency claim as holder of the purchased CHCT RLOC Debt.

14. As part of the Amended Revised Plan and in order to fund operations of NEWCO post-bankruptcy, CHCT will fund NEWCO debt as described herein up to a total amount of $23,000,000 (the "CHCT Exit Financing") comprised of (i) the CHCT RLOC Debt $8,750,000, (ii) the payment of CHCT deficiency claim of $6,700,000 (the "CHCT Deficiency Claim") and (iii) additional incremental CHCT debt financing of $7,550,000, subject to the Sources and Uses as shown herein. NEWCO Principals will contribute to NEWCO their 100% equity interest in the non-debtor hospital at Covington, and NEWCO Principals will make the UCC Contribution (as defined below)(collectively, the "NEWCO Principal Contribution"). In addition, AMG Hospital Company II, LLC, as successor in interest to AMG Hospital Company III, LLC, will contribute its 50% equity interest in the non-debtor hospital at North Alabama to NEWCO.

15. In order to secure repayment of the CHCT Exit Financing, CHCT will maintain a first priority security interest on all NEWCO and NEWCO's subsidiaries ownership interests and assets, including without limitation, all accounts receivable, equipment, tenant improvements, licenses, provider agreements, and subject only to existing equipment leases that are not paid in full.

16. The CHCT Exit Financing will include no pre-payment penalty or premium, closing costs or facility fees.

3

4852-8352-4189 v2
2934797-000004 02/19/2018

17-50799 - #754   File 02/21/18   Enter 02/21/18 15:21:02   Main Document   Pg 3 of 11

17. The CHCT Exit Financing will accrue interest as follows:

   a. During the initial three year period following the Effective Date (the "Interim Period"), the outstanding balance of the CHCT Exit Financing will accrue interest at the rate of 9.0% per annum, with 5.0% of the interest being paid current and 4.0% accrued.

   b. Following the Interim Period, the outstanding balance of the CHCT will accrue interest at the rate of 9.00% per annum, with 6.00% of the interest being paid current and 3% accrued, subject to the adjustments as outlined in c. below.

   c. Following the Interim Period, for any year the outstanding principal balance of the CHCT Exit Financing is more than (i) $10 million, the total pay interest rates shall be increased by 0.75%, or (ii) $5 million the total and current pay interest rates shall be increased by 0.25%.

18. The CHCT Exit Financing will have a maturity date that is 13 years following the Effective Date. The CHCT Exit Financing will be interest only during the Interim Period, subject to Repayment Provision (as defined herein). Following the Interim Period, principal and interest on the outstanding balance of the CHCT will be repaid using a 10-year amortization as described herein.

19. Cash flow generated by NEWCO after the Effective Date will be used to pay expenses and debt in accordance with the following waterfall:

   a. Current NEWCO operating expenses pursuant to normal payables management.
   b. Cash interest due to CHCT under the CHCT Exit Financing.
   c. Payment of cash taxes due by NEWCO Principal Payments in accordance with the Tax Payment Agreement (as defined below).
   d. Catch up of any prior period accrued interest due to CHCT under the CHCT Exit Financing
   e. Payment of any prior period normal amortization due to CHCT (applicable only during 10-year amortization period) such that after such payment, and cumulative through the date of such payment, the annual normal principal amortization paid for the period following the Interim Period is equal to $2,300,000 per year.
   f. Principal payment of current year amortization due to CHCT equal to the lesser of (i) $2,300,000; and (ii) cash flow generated by NEWCO during the applicable year after deducting for items 12(a) through 12(e) described above.
   g. After payments described in 12(a) through 12(f), principals and CHCT shall be entitled to distributions/debt payment in accordance with Agreed Distribution (as defined below).

20. NEWCO organizational documents (collectively, the "NEWCO Organizational Documents") shall have bankruptcy remote features, including without limitation

4

unanimous board or member manager approval for major items. CHCT to have $1,000 redeemable equity interest (the "Redeemable Equity") with the right to appoint 1 independent board member or member manager (the "Board Position"). The Redeemable Equity shall have no rights associated with it beyond the appointment of the Board Position, and shall have no economic value beyond the $1,000 redemption value. The Redeemable Equity will be redeemed by NEWCO when the CHCT Exit Financing is paid off in full.

21. The loan documents evidencing the CHCT Exit Financing (collectively, the "NEWCO Loan Documents") shall include normal and customary loan covenants, including financial covenants, provided however, that such financial covenants will not be applicable or tested during the first two years following the Effective Date. The NEWCO Loan Documents shall have normal and customary reporting requirements including provision of audited financial statements.

22. NEWCO will pay taxes due by NEWCO Principals based on Taxable Income due to "pass through" income of NEWCO (the "Tax Payment Agreement"). The payment of taxes under the Tax Payment Agreement will be made by NEWCO when due based on quarterly estimates and final year-end reconciliation, for the actual tax obligations for NEWCO Principals, subject to NEWCO independent CPA certification and CHCT review in advance of the payment, amounts required to be paid with returns and work papers provided to CHCT with enough time to perform its review.

23. NEWCO will limit bonuses/equity distributions to NEWCO Principals as follow (the "Agreed Distribution"):

    a. No bonuses or distributions shall permitted unless all accrued interest due to CHCT is paid in cash.

       b. Once all accrued interest is paid in cash to CHCT, NEWCO can make distributions provided that it includes a catch up 1:2 pay down of CHCT Exit Financing for all previous tax distributions pursuant to the Tax Payment Agreement and a corresponding 2:1 pay down of CHCT Exit Financing and bonuses subject to the terms herein (collectively the "Debt Repayment"). By way of example, if through the date of a proposed distribution, the Principals have received tax distributions in the amount of $10mm, then before any such non-tax distributions can be made to the Principals, $5mm of principal repayment shall be first be made to the CHCT Exit Financing in satisfaction of the 1:2 requirement. Assuming such $5mm repayment is made, then the Principals shall be entitled to $1 of non-tax distribution for every $2 of additional CHCT Exit Financing pay down that is made unrelated to such tax-based repayments

24. NEWCO Principals shall enter into employment agreements with NEWCO, with normal and customary provisions.

5

a. Salaries for the NEWCO Principals will be equal to an aggregate amount of $1,250,000 annually ($500,000 for Rantz IV, $500,000 for Howard, $250,000 for Rantz III).

b. Compensation amounts shall not be increased without unanimous board or member manager approval.

c. Bonuses shall be allowed – with an aggregate $500,000 limit and subject to a 1:1 debt paydown – to the extent audited EBITDA exceeds Exit Plan EBITDA (as of November 22, 2017) as follows:

   i. 0% to 5% – 10% of salary
   ii. 5.01% to 10% – 20% of salary
   iii. 10.01% to 15% – 30% of salary
   iv. Over 15% – 40% of salary

25. CHCT will consider funding "growth investments", in the consolidated structure, on a case by case basis

26. NEWCO Principals will contribute $500,000 to NEWCO towards funding a lump sum payment to the Liquidation Trust under the Amended Revised Plan (the "Liquidating Trust") for the GUCS in the Bankruptcy Case (the "GUC Contribution"). In addition, $200,000 of the CHCT Exit Financing will be paid to the Liquidating Trust (the "GUC Exit Financing Contribution"). An additional $100,000 of the CHCT Exit Financing will be used to fund the Liquidation Trust administration costs in two payments of $50,000 each (the "Liquidating Trust Fees"). Debtors also will assign all avoidance actions to the Liquidating Trust.

27. $600,000 of the CHCT Exit Financing will be used to fund a lump sum distribution to BOKF in full satisfaction of the BOKF Deficiency Claim (the "BOKF Deficiency Distribution").

28. The Sources and Uses for the CHCT Exit Financing under the Amended Revised is as follows (the "Agreed Sources and Uses"):

**EXIT PLAN SOURCES & USES**

| | |
|---|---:|
| CHCT Exit Financing | 23,000,000 |
| NEWCO Principal Contribution | 500,000 |
| **TOTAL SOURCES** | **23,500,000** |
| | |
| CHCT RLOC Debt | 8,750,000 |
| CHCT Deficiency Refinance | 6,700,000 |
| Bankruptcy Case Administrative Expenses | 1,670,000 |
| Repay Bankruptcy DIP Loan | 1,750,000 |
| Repay CHCT FBT Debt | 2,200,000 |
| Minimum NEWCO Liquidity | 600,000 |

| | |
|---|---:|
| Capital Lease Pay Down | 280,000 |
| CHCT Legal Fees | 150,000 |
| BOKF Deficiency Distribution | 600,000 |
| GUC Exit Financing Contribution | 700,000 |
| Liquidating Trust Fees | 100,000 |
| **TOTAL USES** | **$23,500,000** |

29. The Debtors, NEWCO Principals and CHCT agree that the parties will work in good faith and use best efforts to maintain the Uses line item within the parameters set forth in the Agreed Sources and Uses, provided however, that the parties have flexibility with regard to actual uses required under (i) the DIP Financing, (ii) the CHCT RLOC Debt, including payment of interest, (iii) the CHCT FBT Debt, including interest accruing pursuant to the FBT Takeout Term Sheet, and (iv) Administrative Expenses line items (the "Flexible Expense Items") to the extent the actual expended figure exceeds the designated line item. To the extent that any amount exceeds the designated line item for the Flexible Expense Items, the Uses line item for Capital Lease and Equipment Notes shall be reduced to cover the additional use of funds for the Flexible Expense Items. It is anticipated that NEWCO's opening balance sheet will look substantially as shown on Exhibit A.

30. NEWCO can earn an interest rebate from CHCT against the CHCT Exit Financing equal to 1.0% of the difference between $23,000,000 and the ending principal balance of the CHCT Exit Financing existing on December 31, 2018, up to a total of $150,000 (the "Interest Rebate"). The Interest Rebate is conditioned upon all interest under the CHCT Exit Financing being paid current and no default or event of default exists under the CHCT Debt Financing Loan Documents (as defined herein).

31. On the Effective Date, CHCT will release the NEWCO Principals from any and all claims relating to actions or omissions occurring prior to the Effective Date, including without limitation any and all avoidance actions. NEWCO Principals will release CHCT from any and all claims relating to actions or omission occurring prior to the Effective Date.

32. Upon submission of the Amended Revised Plan incorporating this CHCT Term Sheet and approved by CHCT, CHCT shall support confirmation of the Amended Revised Plan.

33. CHCT must approve the terms of the order entered confirming the Amended Revised Plan (the "Confirmation Order"). The Confirmation Order will provide that Debtors and NEWCO Principals shall release, acquit and discharge CHCT and its officers, directors, agents, employees, successors and assigns from any and all liabilities, claims, demands, actions or causes of action of any kind or nature through the date on which the Bankruptcy Court enters the Confirmation Order

34. The parties will execute loan documents, NEWCO organization documents and employment documents implementing this CHCT Term Sheet in form and content

acceptable to CHCT and the NEWCO Principals (collectively, the "CHCT Debt Financing Loan Documents"). The Parties may require other general terms and conditions in the CHCT Debt Financing Loan Documents as may be reasonably required to implement the terms of this Term Sheet. The parties agree to cooperate with each other in good faith in connection with and shall use commercially reasonable efforts to effect the terms of this Term Sheet including the negotiation and drafting of the CHCT Debt Financing Loan Documents.

35. Nothing contained herein shall modify the current agreement of the Debtors and CHCT with regard to the title to the Youngsville real and personal property, which Debtors have agreed to transfer to CHCT by dation, consensual foreclosure and/or other process requested by CHCT, or the terms and conditions of the FBT Takeout Term Sheet.

36. This Term Sheet may be executed in as many counterparts as may be convenient or required. All counterparts shall collectively constitute a single instrument. For purposes of executing this Term Sheet, a document signed and transmitted by e-mail, facsimile machine or telecopier shall be treated as an original document. The email signature of any party thereon shall be considered an original signature, and the document transmitted shall be considered to have the same binding legal effect as an original signature on an original document. No party hereto may raise the use of a facsimile machine, telecopier or email or the fact that any signature was transmitted through the use of email or a facsimile or telecopier machine as a defense to the enforcement of this Term Sheet or any amendment executed in compliance herewith.

37. This CHCT Term Sheet supersedes any and all other discussions and agreements (written or oral) between NEWCO Principals, Debtors and CHCT with respect to the transaction contemplated herein, including without limitation the Original Term Sheet and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties.

38. This CHCT Term Sheet shall not be amended except by a writing signed on behalf of the party to be charged with such amendment.

39. No person or entity not a party to this CHCT Term Sheet shall have any third party beneficiary claim or other right hereunder or with respect thereto.

40. If the Bankruptcy Court fails to approve the Amended Revised Plan implementing this CHCT Term Sheet or fails to enter the Confirmation Order approving a Plan implementing this CHCT Term Sheet, or the parties cannot reach agreement on the terms and conditions of the CHCT Debt Financing Loan Documents in good faith (each, a "Terminating Event"), the CHCT Term Sheet will terminate and all parties will reserve any and all rights, claims and actions as if this Term Sheet had not been executed. Nothing herein shall constitute a waiver of any and all of CHCT's rights and CHCT specifically reserves all remedies, actions, claims and other rights thereunder in the event of a Terminating Event.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

9

4852-8352-4189 v2
2934797-000004 02/19/2018

AGREED AND ENTERED THIS ___ DAY OF FEBRUARY, 2018.

**DEBTORS:**

**ACADIANA MANAGEMENT GROUP, L.L.C.**, for itself and for all Debtors

By: _/s/ illegible signature_

Name: August J Rantz, IV

Its: President

**NEWCO PRINCIPALS:**

_/s/ signature_
AUGUST J. RANTZ III

_/s/ signature_
AUGUST J. RANTZ IV

_/s/ signature_
TIMOTHY W. HOWARD

**CHCT LOUISIANA, LLC:**

By: _____

Name: _____

Its: _____

10

AGREED AND ENTERED THIS ___ DAY OF FEBRUARY, 2018.

**DEBTORS:**

**ACADIANA MANAGEMENT GROUP, L.L.C.**, for itself and for all Debtors

By: _____

Name: _____

Its: _____

**NEWCO PRINCIPALS:**

_____
AUGUST J. RANTZ III

_____
AUGUST J. RANTZ IV

_____
TIMOTHY W. HOWARD

**CHCT LOUISIANA, LLC:**

By: _____

Name: __Timothy Wallace_____

Its: __President_____