UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:                                              CASE NO. 17-50799

ACADIANA MANAGEMENT GROUP, LLC., et al.[1]          CHAPTER 11

DEBTORS                                             JOINTLY ADMINISTERED

**OBJECTION TO CONFIRMATION OF FOURTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR ACADIANA MANAGEMENT GROUP, LLC, ET AL. JANUARY 3, 2018**

Gifted Nurses, LLC, an unsecured creditor and party in interest in this proceeding, submits this objection to confirmation of the Fourth Amended Chapter 11 Plan of Reorganization for Acadiana Management Group, LLC, et al. January 3, 2018 ("Plan"), for the following reasons:

1. The debtors' Plan has been proposed in bad faith thereby violating section 1129(a)(3) of the Bankruptcy Code. More particularly, the debtors' Plan does not comprise an attempt to reorganize or to pay unsecured creditors' claims. Rather it comprises an effort to retain certain assets and operations of the various debtor entities by transferring them to a new company operated by the same managers of the debtors, while utilizing financing which is designed primarily for the purpose of paying certain secured creditor claims, including the unsecured deficiency portion of a certain undersecured creditor's claim (i.e., CHCT), all to the detriment of general unsecured creditors of the estate.

---

[1] AMG Hospital, L.L.C., Case No. 17-50800; AMG Hospital Company II, L.L.C., Case No.17-50801; Albuquerque – AMG Specialty Hospital, L.L.C. Case No. 17-50802; Central Indiana – AMG Specialty Hospital, L.L.C., Case No. 17-50803; Tulsa – AMG Specialty Hospital, L.L.C., Case No. 17-50804; LTAC Hospital of Louisiana – Denham Springs, L.L.C., Case No. 17-50805; Las Vegas – AMG Specialty Hospital, L.L.C., Case No. 17-50806; LTAC Hospital of Greenwood, L.L.C., Case No. 17-50807; LTAC of Louisiana, L.L.C., Case No. 17-50808; Houma – AMG Specialty Hospital, L.L.C., Case No. 17-50809; LTAC Hospital of Edmond, L.L.C., Case No. 17-508010; LTAC Hospital of Wichita, L.L.C., Case No. 17-50811; AMG Realty I, L.L.C., Case No. 17-50812; CHFG Albuquerque, L.L.C., Case No. 17-508013; and AMG Realty Youngsville, L.L.C., Case No. 17-508014.

1

2. According to section 3.5(c) of the Plan, CHCT is to fund or loan the newly created entity known as "NewCo" up to a total amount of $22,750,000.00, a portion of which loan proceeds are to be utilized to pay CHCT's own unsecured deficiency claim of some $6,700,000.00 in full. On the other hand, under Class 8 of the Plan, which purports to consist of general unsecured claims, the subclass 8A general unsecured claims thereof are to receive payments from the "Rantz III UCC Contribution" of $250,000.00 and the Liquidating Trust. This discrimination, with respect to the treatment of Cass 8A general unsecured claims in comparison to the unsecured deficiency claim of CHCT, as more fully addressed hereinbelow, is another indicia of the debtors' bad faith in connection with the proposed Plan.

3. In addition to the foregoing, under section 5.3.1 of the Plan, general unsecured creditors who vote against the Plan are to be deprived of any distributions should the Plan be confirmed and should the class in which such creditor voted reject the Plan. Threatening general unsecured creditors with such a deprivation in connection with a liquidating Plan wherein the (i) existing management of the debtors will maintain control and the operation of the assets of the debtors via the transfer thereof to a "new entity" that will be owned and operated thereby; (ii) undersecured or unsecured creditor deficiency claims are paid in full via financing obtained from the very creditor providing such financing (i.e., CHCT), including the payment, in full, of debts secured by the assets of the non-debtor entities of "North Alabama" and "Covington", in exchange for which CHCT will acquire a security interest in such assets; and (iii) the depriving of general unsecured creditors who vote against the Plan from any distributions whatsoever, is the epitome of bad faith and unfair discrimination. See *In re MCorp Financial, Inc.*, 137 B.R. 219, 236 (Bankr.S.D.Tex. 1992) (there is no authority in the Bankruptcy Code for discriminating against classes who vote against a plan of reorganization, and such a provision results in the plan not being fair and equitable).

4. The classification of two (2) unsecured classes of general unsecured claims comprises improper "gerrymandering" designed to obtain the acceptance of an impaired class in violation of sections 1122(a) and 1129(a)(3) of the Bankruptcy Code. More specifically, the Plan divides general unsecured claims into two (2) subclasses in order to segregate the claims of purported "critical vendors" or service providers of the debtors (i.e., Class 8B) and the claims of apparent "non-critical vendors" or service providers of the debtors (i.e., Class 8A). Class 8B claims are to be paid in full whereas Class 8A claims will receive little, if any, recovery under the Plan.[2]

5. In re *Greystone III Joint Venture*, 995F.2d 1274, 1279 (5th Cir. 1991) the Fifth Circuit held that "one clear rule" has emerged from otherwise muddled section 1122 case law: "[T]hou shall not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan". The burden to justify any separate classification of substantially similar claims, such as those of the general unsecured creditors in sub-classes 8A and 8B, is on the plan proponent if a party in interest objects on gerrymandering grounds. See *In re McCorp Financial, Inc.*, at 225 (the debtor proponent bears the burden of the proof on the elements essential for confirmation). Just because the debtors selected certain trade vendors or service providers over other trade vendors or service providers, based on what it purports to or perceives to be those vendors that the newly formed company may want to utilize in the future, is not a valid justification for the separate classification of such trade vendors or service providers as the ownership of all debtors and their assets are being transferred to a new company. In other words, there is no actual "reorganized debtor" under the debtors' Plan, only the liquidation of the debtors' assets via a transfer to the newly created non-debtor entity "NewCo".

---

[2] Once again, Class 8A is to be paid from the "Rantz III, LLC Contribution of $250,000.00 and the Liquidating Trust" (i.e., section 3.5(h) of the Plan), and creditors who vote against the Plan in that class will not receive any distributions under the Plan if that class votes to reject the Plan.

3

17-50799 - #755   File 02/22/18   Enter 02/22/18 16:30:02   Main Document   Pg 3 of 6

6. Furthermore, there are numerous vendors, e.g., the supposed non-critical vendors, who have provided similar services to the debtors and that were originally labelled as critical in its initial Motion for Approval to Pay Critical Vendors (Doc. 8), only to later find themselves redacted from that initial listing of formerly espoused "critical vendors" via an Amended Motion for Approval to Pay Critical Vendors (Doc. 298) filed by the debtors.[3] This creditor submits that this maneuver is most likely attributable to the management of the debtors and, ultimately, the management of the new entity "New Co", seeking to maintain business dealings with select vendors for the benefit of new non-debtor entity in lieu of paying the claims of unsecured creditors of the actual debtors in this proceeding. Thus, in addition to comprising a bad faith component of the Plan, the Plan impermissibly classifies substantively similar claims of general unsecured creditors separately in order to gerrymander an affirmative vote on reorganization in violation of sections 1122 and 1129(a)(3) of the Bankruptcy Code.

7. The disparate treatment of Class 8A general unsecured claims in comparison to Class 8B general unsecured claims also violates section 1129(b)(1)'s prohibition of "unfair discrimination". Under this standard, if the treatment of substantially similar claims is "grossly disparate" it is very difficult for the plan proponent to show "fair discrimination". See *In re Tribune*, 472 B.R. 223, 243 (Bankr. Del. 2012) (defining grossly disparate as a difference of 50% or more recovery (e.g., 10% versus 60% recovery), and stating that courts have "roundly rejected plans" proposing such treatment). See also *In re Sea Trail*, 2012 WL 5247175 at *8 (Bankr. E.D.N.C. 2012) (a critical distinction . . . . between cases in which plans have been determined to be unfairly discriminatory and those that have not is the magnitude of the difference in the amount of recovery between similarly situated classes); and *In re Greate Bay Hotel & Casino,*

---

[3] A comparison of the debtors' "Critical Vendors Motion" filed on June 23, 2017, with its "Amended Critical Vendors Motion" filed on September 18, 2017, reflects that the number of previously asserted critical vendors were significantly reduced to some 31 in number.

4

*Inc.*, 251 B.R. 217, 231 (Bankr. N.J. 2000) (grossly disparate treatment is a difference of 50% or more).

8. As previously alluded to hereinabove, Class 8B general unsecured claims are to be paid a dividend equal to 100% of their claims while Class 8A general unsecured claims are to be about 7% of their approximately $23 million in unsecured claims (including deficiency claims). As also previously alluded to hereinabove, Class 8A general unsecured claims are slated to receive 0% of their claims if they vote to reject the Plan. Accordingly, there is a gross disparity between the dividend to Class 8B general unsecured claims (i.e., 100%) and the proposed dividend to Class 8A general unsecured claims (i.e., 0% to 7%). On this basis alone, the Plan unfairly discriminates against Class 8A general unsecured creditors.

9. The Plan also violates section 1129(a)(7) of the Bankruptcy Code as unsecured creditors will receive, under the Plan, payments on their claims that are less than the amount that such creditors would receive if the debtors were liquidated under Chapter 7. First and foremost, under section 3.5 of the Plan, the CHCT deficiency claim in the amount of $6,700,000.00, which comprises an unsecured deficiency claim, is being paid in full, in preference to and to the detriment of Class 8A general unsecured creditors with whom CHCT would otherwise share in payment, on a pro rata basis, in a liquidation case of the debtors. Second, potential fraudulent conveyances made to the debtors' insiders that may be recoverable, in a Chapter 7 liquidation case, against such insiders are being released under the Plan.[4] Such claims, at a minimum, may amount to approximately $7 million which, in the context of a Chapter 7 liquidation case, would go directly towards the payment of the claims of general unsecured creditors after payment of administrative expenses and claims entitled to priority under section 507 of the Bankruptcy Code. Accordingly, the Plan is not in the best interest of the general unsecured creditors of the estate.

---

[4] Section B of Article VII of the Plan states that the alleged Chapter 5 causes of action against the management on behalf of the debtors will be compromised.

5

For those reasons set forth hereinabove, confirmation of the debtors' Plan should be denied.

Respectfully submitted,

*/s/ Darryl T. Landwehr*
DARRYL T. LANDWEHR (La. Bar. No.17677)
LANDWEHR LAW FIRM
1010 Common Street, Suite 1710
New Orleans, Louisiana 70112
Telephone: (504) 561-8086
Attorneys for Gifted Nurses, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that a copy foregoing Objection to Confirmation of Fourth Amended Chapter 11 Plan of Reorganization for Acadiana Management Group, LLC, et al. January 3, 2018 has been served upon Bradley L. Drell, P. O. Box 6118, Alexandria, Louisiana 71307-6118, via the Court's CM/ECF system, on this 22nd day of February, 2018.

*/s/ Darryl T. Landwehr*
DARRYL T. LANDWEHR (La. Bar. No.17677)